288 So.2d 817

**Patrick WARREN**

v.

**STATE.**

**1 Div. 328.**

Court of Criminal Appeals of Alabama.

March 13, 1973.

Rehearing Denied May 1, 1973.

Thomas M. Haas, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant, Patrick Warren, was tried and convicted in Baldwin County Circuit Court for selling marihuana in violation of the Alabama Uniform Controlled Substances Act.[1] Punishment was fixed at four (4) years imprisonment in the penitentiary by the court.

Briefly, the facts of this case necessary for consideration on appeal are as follows: Appellant was indicted for selling marihuana to H. E. Mitchell, an undercover agent for the Alabama Department of Public Safety. The sale, according to Mitchell, occurred on September 18, 1971, at the residence of appellant Warren in Fairhope, Alabama, in the presence of Warren's younger brother, Timothy. Mitchell testi-

fied that he paid appellant five dollars for a "two cent match box" full of marihuana, which had been emptied from a plastic bag into the box by appellant. Agent Mitchell further testified that the bag was brought into the house by appellant's younger brother from an automobile at appellant's request. However, appellant's brother testified that no sale of any kind took place while Mitchell was visiting his brother and that he did not go outside and get any marihuana.

Testifying for the State, Dr. Nelson Grubbs, a state toxicologist, stated that he received a match box containing plant material from state investigator C. H. Webber on September 21, 1971. Earlier Webber had testified that the match box was delivered to him by agent Mitchell on September 18, 1971, and was in substantially the same condition when he gave it to Dr. Grubbs. Dr. Grubbs, who was qualified as an expert witness, stated that following an analysis of the substance he determined it to be marihuana.

Prior to the trial in chief, appellant filed numerous motions which were all denied by the trial court. In pursuing this appeal, appellant argues that the trial court erred in overruling certain of these motions. On the motion of appellant's counsel to suppress the state's evidence, the trial court excluded the jury and conducted a full hearing on the issues concerning the admissibility of the state's evidence. Among the grounds which appellant asserted were illegal search and seizure; invasion of the right to privacy; that the evidence was obtained by fraud, deceit and trickery by the state's agent; and that the evidence was unlawful in that it was obtained by entrapment. In support of his motion to suppress, appellant Warren called investigator Webber, along with two friends of the appellant. From the record, it is readily apparent that appellant's counsel was attempting to show illegal entrapment on the

[1.] Alabama Acts, Act No. 1407, 1971 Reg. Session, which is codified at Tit. 22 § 258 (25) et seq. Ala.Code (1940) (1971 Cum. Supp. Vol. 6). Marihuana is specifically proscribed in Schedule I of the Act. See § 204(d)(10).

part of agent Mitchell. In response to a question, agent Mitchell described the sale as follows:

"I had been assigned here on an undercover operation to try to buy drugs from folks trafficing in drugs in the Fairhope area. On that occasion I went to his residence and knocked on the door and his younger brother admitted me inside the house and said Pat was taking a shower and would be out shortly, and I went in and waited and when Patrick came out I asked him if he had any grass, and he said he had a 'lid' in the car and would sell me a match box of it, and he told his younger brother to go out and bring it in, and he did so and he emptied the matches out of a match box and helped the younger brother fill it with marijuana and handed it to me and I gave him $5.00 for it."

Mitchell further stated that while working in the Fairhope area, he was accompanied by a young resident of that area, however, he (Mitchell) did not know the young man's name but only that the young man was to help him make "buys". According to the two witnesses called by the appellant, Mitchell made an unsuccessful attempt to purchase marihuana in the Fairhope Bay area from Warren in August, 1971, in their presence.

■ There was no error in overruling the motion to suppress. Clearly, there was no "search" of which appellant could complain. Nor was there any "invasion of privacy" as agent Mitchell was *invited* into appellant's residence by his younger brother. Likewise, the marihuana was not rendered inadmissible because of any "unreasonable" seizure perpetrated by "fraud, deceit, and trickery". Since all the evidence adduced by appellant showed no sale took place under any circumstances, could there have been entrapment? Nevertheless, the trial court submitted the issue of entrapment to the jury for its consideration.

Prior to the trial, appellant challenged the constitutionality of the Alabama Uniform Controlled Substances Act (hereinafter referred to as Controlled Substances Act) by filing a motion to dismiss the indictment. Appellant's motion was overruled by the trial court and now, appellant in his brief renews his attack upon the statute under which he was later convicted. Appellant contends that the statute is unconstitutional because it "arbitrarily classifies marihuana with hard narcotics". Appellant further maintains that the Controlled Substances Act is unconstitutional because it is violative of Article 4, Section 45 of the Alabama Constitution.

■ Generally, a state, in the exercise of its police power, may regulate the administration, sale, possession, and use of narcotic drugs. See cases in 25 Am.Jur. 2d, "Drugs, Narcotics, and Poisons", § 17 Page 294. Obviously, it was the intent of our legislature to prevent drug abuse, control drug possession, and generally standardize Alabama's drug laws in enacting the Controlled Substances Act.[2] Unless the inclusion of marihuana with other drugs is so arbitrary or unreasonable in that it is not related to a rational public purpose, there is no denial of equal protection under the Fourteenth Amendment to the United States Constitution. Because there are no pertinent Alabama cases on this point, we turn to cases of our sister jurisdictions. Appellant, in his brief, directs us to two cases which he contends should be controlling in the instant case. In People v. McCabe, 49 Ill.2d 338, 275 N. E.2d 407 (1971), the Illinois Supreme Court held that the classification of marihuana in Illinois' Narcotic Drug Act, which provided for a mandatory ten-year minimum sentence, rather than in the Drug Abuse Control Act, which provided for a maximum sentence of one year upon initial conviction, was arbitrary and denied equal protection. The *McCabe* decision is clearly distinguishable from the case before this

2. See preamble to Alabama Uniform Controlled Substances Act for statement of purpose. Alabama Acts, No. 1407, 1971 Regular Session.

court and hence is inapplicable. In *McCabe*, there were two separate statutes involved with no rational basis for classifying marihuana with the "hard" narcotics rather than with "stimulant or depressant" drugs. Further, there is a gross disparity between the penalties under the two statutes. Here, we have no question concerning the arbitrary classification of "soft" drugs in one statute and the classification of "hard" drugs in yet another. Nor is there any different penalty imposed for the sale of any of the proscribed drugs under the Alabama statute.[3]

Appellant's brief also refers this court to a 1972 Michigan case, People v. Lorentzen, 387 Michigan 167, 194 N.W.2d 827. After analysis of *Lorentzen,* it is apparent that it too, is without application in the instant case. In *Lorentzen,* the Michigan Supreme Court ruled that a minimum penalty of twenty (20) years imprisonment for selling marihuana violated the United States and Michigan Constitutions' provisions against cruel and unusual punishment.

Our research indicates that the *McCabe* view is apparently the minority one. Several of our sister states have expressly rejected the approach taken in *McCabe*, supra. Recently, in Renya v. State, 434 S.W.2d 362, the Texas Criminal Court of Appeals held that the inclusion of marihuana in the same category as other addicting drugs more potent in destructive potential was not a violation of equal protection or due process of law under the Texas and United States Constitutions. The *Renya* decision also reviews the relevant cases from other states on this point. Among these cases are, People v. Stark, 157 Colo. 59, 400 P.2d 923; Spence v. Sacks, 173 Ohio St. 419, 183 N.E.2d 363; State v. Page, 395 S.W.2d 146 (Mo); Jenkins v. State, 215 Md. 70, 137 A.2d 115; People v. Mistriel, 110 Cal.App.2d 110, 241 P.2d 1050. Other recent state decisions on this point are Willoughby v. State, 481 S.W.2d

893 (Tex.Cr.App.); Finklea v. State, 481 S.W.2d 889 (Tex.Cr.App.); Hunter v. State, 481 S.W.2d 806 (Tex.Cr.App.); Sanders v. State, 482 S.W.2d 648 (Tex.Cr. App.); State ex rel. Scott v. Conaty, 187 S.E.2d 119 (W.Va.Sp.Ct. of App.); Borras v. State, 229 So.2d 244 (Fla.1969); Raines v. State, 225 So.2d 330 (Fla.1969); State v. Kantner, 493 P.2d 306 (Haw.).

Another important factor for consideration is the plainly evident absence of any evidence vis-à-vis the invalidity of the classification of marihuana with other drugs. Appellant attacked the constitutionality of the Controlled Substances Act in his pretrial motion to dismiss the indictment; however, at the trial he presented no evidence concerning the invalidity of the classification. Determining whether a statutory classification is valid when placed in juxtaposition with the requirements of equal protection of our state and federal constitutions requires that the statute be clothed with a presumption of constitutional validity. And, consequently, the burden of showing that such classification is invalid rests on the party challenging the statutory scheme. Alabama Digest, Constitutional Law, ⬯48; Wilkey v. State ex rel. Smith, 244 Ala. 568, 14 So.2d 536, cert. denied 320 U.S. 787, 64 S.Ct. 195, 88 L.Ed. 473; Al Means, Inc. v. City of Montgomery, 268 Ala. 31, 104 So.2d 816.

Suffice it to say there is a great disparity of opinion as to the ills and effects of marihuana; hence, this court is unable to take any judicial notice of whether marihuana is so unlike the other drugs in the Controlled Substances Act as to be unreasonably included therein. We further believe the dissent in *McCabe* to be the better view and we agree with Chief Justice Underwood of the Illinois Supreme Court in his well-reasoned dissent:

"In the absence of more nearly conclusive evidence that the legislative judgment was devoid of any rational basis, a finding of unconstitutionality is unwar-

---

3. See Title 22, Sec. 258(47)(a), Ala.Code (1940) 1971 Cum.Supp. Vol. 6 for penalties.

ranted, for *few rules of law are more soundly bottomed than that which proscribes judicial interference with legislative discretion."*

275 N.E.2d at 415 (emphasis added).

■ Our legislature elected to include marihuana in the Controlled Substances Act and we have constitutionally tested that decision under applicable law. Its decision was not violative of the equal protection clauses of our state constitution or the Constitution of the United States.

Appellant also complains that the Controlled Substances Act is unconstitutional in that it violates Article 4, Section 45 of the Alabama Constitution (Constitution, 1901, Art. 4, § 45), because it contains more than one subject. The relevant portion of Art. 4, § 45 states: "Each law shall contain but one subject, which shall be clearly expressed in its title, * * *".

■ This provision requires that the title of an act sufficiently apprise the legislature and public of the contents of the act. Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694; Newton v. City of Tuscaloosa, 251 Ala. 209, 36 So.2d 487. The title of the Alabama Uniform Controlled Substances Act reads:

"AN ACT

"To provide a Uniform Alabama Controlled Substances Act for preventing drug abuse and drug dependence, to standardize all laws in this state to be in conformity with the new Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, and to repeal existing state statutes in conflict."

(See Act No. 1407, Acts of Alabama, Regular Session, 1971, Vol. III).

■ We hold that the title of the act in question is a fair expression of the single subject there encompassed. See Lovejoy v. City of Montgomery, 180 Ala. 473, 61 So. 597; Pillans v. Hancock, 203 Ala. 570,

84 So. 757; Bozeman v. Conecuh, County Board of Education, 282 Ala. 543, 213 So. 2d 388. Obviously, the Controlled Substances Act seeks to regulate possession and sale of proscribed drugs, hence, the provisions of the act are all germane and properly within the purview of its singular purpose and title. Kendrick v. Boyd, supra.

Next we consider the contentions advanced by appellant's counsel that the trial court erred in allowing the prosecution to ask certain questions of appellant's witnesses. From the record:

"Q. Are you a user of drugs?

"MR. HAAS: We object.

"THE COURT: Overrule the objection.

"MR. HAAS: Except.

"A. What do you mean by drugs?

"Q. Any of the drugs prohibited by the State of Alabama.

"MR. HAAS: I don't represent this young fellow and he is entitled to be protected and if his answer was yes—

"THE COURT: He is not on trial.

"MR. HAAS: He could be incriminated.

"THE COURT: Overrule the objection.

"MR. HAAS: Except.

"WITNESS: Do I have to answer that?

"THE COURT: Yes.

"MR. HAAS: I ask that he not be prosecuted for being forced to answer.

"THE COURT: I will take care of that.

"A. Yes."

* * * * * *

"Q. Have you smoked Marijuana in the past?

"MR. HAAS: I submit he doesn't have to answer that.

"THE COURT: Overrule the objection.

"MR. HAAS: Except.

"A. I have tired it only once."

■ It is generally settled law in this jurisdiction that a *mere accusation* against a witness even for a crime involving moral turpitude is inadmissible as regards his credibility. Horsley v. State, 19 Ala.App. 263, 96 So. 937; Rogers v. State, 34 Ala. App. 617, 42 So.2d 642. In Meador v. State, 37 Ala.App. 573, 72 So.2d 418, Judge (now Justice) Harwood writing for this court pointed out:

"While a witness' prior conviction for a crime involving moral turpitude may be shown as going to his credibility, a mere 'involvement' in such a crime possesses no probative value and evidence to that effect is meaningless and obscure."

In *Meador,* the prosecution was allowed to ask a defense witness the following question over objection of the defendant's counsel:

"Q. Were you involved when there was a theft of a locker at the barracks?— Theft of a locker at Foley?—Along with this boy?

"MR. EPPERSON: We object.

"THE COURT: Overrule the objection.

"MR. EPPERSON: Except.

"Q. Answer the question—yes or no?

"A. Yes."

The Court of Appeals went on to hold that the general nature of the objection was not fatally defective and because it was impossible to render the questions legal by reframing or by introducing additional evidence, the trial court committed reversible error in overruling the objection. Rogers v. State, supra; Parker v. State, 280 Ala. 685, 198 So.2d 261.

■ The general rule permits cross-examination of a witness to ascertain his interest, bias, prejudice or partiality concerning his testimony. Maples v. State, 44 Ala.App. 491, 214 So.2d 700; Barber v. State, 23 Ala.App. 584, 129 So. 492; Nichols v. State, 276 Ala. 209, 160 So.2d 619. See generally, McElroy, The Law of Evidence in Alabama, Vol. 1, Sec. 149.01(1). In Russell v. State, 19 Ala.App. 425, 97 So. 845, the court ruled that it was reversible error for the trial court to disallow questions aimed at ascertaining the feelings and relations of a witness toward the parties. Although this court has intimated on several occasions that the proper way to show bias on the part of a witness is to first ask him the state of his feelings prior to questioning him directly, our Supreme Court has ruled that it is not a condition precedent to such inquiry. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Hatas, 287 Ala. 344, 252 So.2d 7; Louisville & Nashville Railroad Co. v. Martin, 240 Ala. 124, 198 So. 141.

■ It is not apparent from the record as to the prosecutor's exact motivation in asking the appellant's witnesses about their prior use of drugs. It is obvious to us that it was for the purpose of showing possible bias or partiality in favor of the appellant. Certainly as regards the credibility of these two defense witnesses, it was a proper means of exploring their possible bias in favor of appellant. We are not prepared to rule that this was improper cross-examination as it was largely within the discretion of the trial court and absent clearly prejudicial effects, its rulings will not be disturbed. Benefield v. State, 44 Ala.App. 339, 208 So.2d 449, cert. den. 282 Ala. 19, 208 So.2d 455.

In Green v. State, 258 Ala. 471, 64 So.2d 84, the Supreme Court said:

"As affecting credibility, it is permissible, on cross-examination, to inquire of a

witness concerning his relations to the parties, or to the subject-matter of controversy, or as to the feelings of sympathy, or partiality, or hostility which he may entertain, or may have expressed towards the party introducing him, or against whom he is introduced."

Appellant also complains that the trial court committed reversible error in allowing certain closing arguments by the prosecution. From the record:

"MR. HAAS: I object to that argument or the inference from it, and I object to his remark that they, referring to the two witnesses, Malbis and Dorgan, admitted they smoked Marihuana, and had been running with the defendant, and he pointed to the defendant. There is no evidence that he smoked Marihuana with the defendant.

"THE COURT: I don't think he meant that. If the jury thought the inference of the connection that they smoked Marihuana had anything to do with the case —I don't think Mr. Hendrix meant to infer that."

■ Although appellant's counsel duly interposed an objection to the prosecution's argument, there is no corresponding ruling by the trial court and absent a ruling by the trial court, we are unable to review this portion of the prosecution's argument. Washington v. State, 259 Ala. 104, 65 So. 2d 704; Espey v. State, 270 Ala. 669, 120 So.2d 904; Carpenter v. State, 42 Ala.App. 618, 174 So.2d 336.

Further, appellant urges this court to reverse on the basis of the following closing argument by the prosecution:

"MR. HAAS: The defendant objects to the remark by Mr. Hendrix: 'The only one that said he didn't sell it was the little brother.' That's improper argument and I object.

"THE COURT: Overrule the objection.

"MR. HENDRIX: Except.

"REPORTER'S NOTE: This happened while Mr. Hendrix was arguing to the Jury and said: 'The little brother was the only one that said he didn't sell it.' "

In support of this contention, appellant argues that this was an impermissible reference to the fact that the defendant did not take the stand in his own behalf. Our Code provides that a defendant's failure to testify may not be subject of comment by counsel. Title 15, Sec. 305, Code of Alabama 1940.

■ The import of the cases from this court and the Supreme Court is that to constitute error there must be a direct reference to the failure of the defendant to testify. Williams v. State, 43 Ala.App. 343, 190 So.2d 556; Broadway v. State, 257 Ala. 414, 60 So.2d 701; Swain v. State, 275 Ala. 508, 156 So.2d 368; Vinet v. State, 38 Ala.App. 299, 83 So.2d 357.

■ We hold that this was not a direct comment by the prosecution on appellant's failure to testify.

■ Appellant also claims as reversible error the trial court's refusal of his two requested charges concerning entrapment. We have said that since appellant's evidence shows that there was no sale, it follows as a matter of law there could not have been an entrapment. Nevertheless we are convinced that the relevant elements of the law of entrapment were correctly stated to the jury. Consequently, the requested charges concerning entrapment were properly refused as the court's oral charge fairly and substantially covered the subject. The trial court accorded appellant more than he was entitled to in this regard. Gautney v. State, 284 Ala. 82, 222 So.2d 175; Young v. State, 283 Ala. 676, 220 So.2d 843; Kelly v.

State, 47 Ala.App. 426, 255 So.2d 608; White v. State, 47 Ala.App. 282, 253 So.2d 351.

In his brief, appellant also contends that the affirmative charge was erroneously refused. We do not agree. Here, there was sufficient testimony and other evidence to make out a prima facie case and there was no error in refusing the affirmative charge requested by the appellant.

Appellant further argues that the court erred to reversal in allowing Dr. Nelson E. Grubbs, State Toxicologist, to testify as to the contents of the match box turned over to him by investigator C. H. Webber. We are not convinced by the argument that the proper chain of evidence had not been established. Both Mitchell and Webber were questioned explicitly concerning the identity and the condition of the match box. For example, on direct examination, investigator Webber was asked the following:

"Q. Do you know Investigator Mitchell that was here prior to you?

"A. Yes, sir.

"Q. Did he, on September 18th, or there abouts deliver anything to you?

"A. He did.

"Q. What?

"A. A match box of plant material.

"Q. What did you in turn do with it?

"A. I delivered it personally to the State Toxicologist in Mobile.

"Q. What date?

"A. The 21st.

"Q. What date did Officer Mitchell give it to you?

"A. The night of the 18th.

"Q. Was that the only box of plant material he gave to you on that date?

"A. Yes sir.

"Q. When you delivered it to Doctor Grubbs in Mobile on the 21st, had it been in your possession continuously?

"A. Yes sir.

"Q. When you delivered it to Doctor Grubbs on the 21st, was it in substantially the same condition as when you received it from Mr. Mitchell?

"A. Yes sir.

"Q. You are speaking of Doctor Nelson Grubbs, the State Toxicologist in Mobile, Alabama?

"A. Yes sir."

▮ The testimony of the State's witnesses—Mitchell, Webber, and then Grubbs—sufficiently established the chain of evidence. See Russell v. State, 47 Ala.App. 612, 259 So.2d 298; King v. State, 45 Ala. App. 348, 230 So.2d 538; Green v. State, 42 Ala.App. 439, 167 So.2d 694; Dennison v. State, 259 Ala. 424, 66 So.2d 552.

▮ We are also pressed to reverse this case on the ground that a "proper predicate" was never laid for the identification by Dr. Grubbs of the substance as marihuana. Appellant's counsel maintains in his brief that the Controlled Substances Act so changed the definition of marihuana that it was incumbent upon the state to show that the appellant did not lawfully sell the marihuana. First, it is clear that the testimony of Dr. Grubbs when considered in connection with the other testimony was sufficient to make out a case without introduction of the actual marihuana itself. Taylor v. State, 47 Ala.App. 285, 253 So.2d 354; Jenkins v. State, 46 Ala.App. 719, 248 So.2d 758.

Furthermore, the record is completely devoid of any objections as to Dr. Grubbs' qualifications but, to the contrary, the record clearly shows that he was qualified by the prosecution prior to his testimony.

Appellant refers this court to Sizemore v. State, 45 Ala.App. 126, 226 So.2d 669, and argues that this case requires the state to prove, as a part of its case, that appellant was not entitled to dispense marihuana. In *Sizemore,* supra, the defendant was charged with illegally possessing amphetamines in violation of Alabama's amphetamine statute.[4] Under Sec. 3(4) of the statute, possession of amphetamines obtained on prescription was not an offense. Consequently, Judge Cates writing for the court held that it was necessary for the state to negative Sizemore's innocent possession within the statutory language. We believe any argument that the rationale of *Sizemore* is applicable in the instant case to be *non sequitur.*

First, the *Sizemore* case involved possession of amphetamines—a drug commonly prescribed by physicians for patients. Marihuana is not a "drug" which is normally prescribed by physicians and sold over-the-counter by pharmacists. Second, although the Controlled Substances Act provides an "exceptions" section concerning who may lawfully dispense drugs under the act, the exceptions section is not a part of the penalty clause itself.[5] Under the general rule cited in *Sizemore,* negativing the "matter of exception" is only necessary where the exception defining the crime is set forth in the enacting clause. Thus, the result in *Sizemore* is not applicable here. Cf. Harris v. State, 248 Ala. 389, 27 So.2d 797; Dorgan v. State, 29 Ala.App. 362, 196 So. 160.

We have carefully searched the record for error and have found none. This case is due to be and is hereby

Affirmed.

All the Judges concur.

---

4. At the time of the *Sizemore* decision, possession of amphetamines was made unlawful by Act No. 189, Acts of Alabama, 1961 which was embodied in our Code at Tit. 22, Sec. 258 (13)–(20), Code of Alabama 1940. This statute was apparently repealed by the Alabama Drug Abuse Control Act, Act No. 252, Acts of Alabama, 1967. Of course, the Alabama Drug Abuse Control Act was subsequently repealed by the Controlled Substances Act in 1971.

5. See Tit. 22, Sec. 258(47)(a) and Sec. 258 (40)(b), Code of Alabama, 1940.