STATE of Delaware

v.

Ted GULA.

STATE of Delaware

v.

Alice MARTIN and Michael F. Clark.

STATE of Delaware

v.

Jean HANEWINCKEL.

STATE of Delaware

v.

Joseph J. DALE.

Superior Court of Delaware,
New Castle.

April 19, 1974.

Jeffrey M. Weiner, Robert Graham, Deputy Attys. Gen., Dept. of Justice, Wilmington, for the State.

Biggs & Battaglia, and Becker & Kipp, Wilmington, for defendants.

## OPINION

O'HARA, Judge.

Each defendant in this matter has been indicted for multiple violations of the Uniform Controlled Substances Act (hereinafter "the Act"), 16 Del.C. Chap. 47. Claiming that no schedule of controlled substances currently exists to sustain prosecution, and that classification of marijuana as a Schedule I controlled substance is unconstitutional, the defendants move separately for dismissal of the indictments for lack of jurisdiction. Superior Court Criminal Rule 12(b), Del.C.Ann.

The motions were consolidated for briefing and oral argument. At oral argument, in deference to substantial precedent, the defendants abandoned their attack on the

constitutionality of classifying marijuana as a Schedule I controlled substance. United States v. Kiffer, 477 F.2d 349 (2nd Cir. 1973); Warren v. State, 52 Ala.App. 35, 288 So.2d 817 (Ala.Cr.App.1973); State v. Tyler, 1525 Cr.A.1970 [1]. However, the defendants do continue in their vigorous assertion that no list of controlled substances currently exists which would support prosecution. This novel argument is closely bound up in the procedural scheme of the Act, its prototype (hereinafter sometimes referred to as "the Uniform Act") promulgated in 1970 by the National Conference of Commissioners on Uniform Laws, and its federal counterpart, 21 U.S.C.A. § 811 et seq. Of necessity, discussion of defendants' argument, the State's position, applicable case law, and the legislation involved will be in some detail.

Delaware's version of the Uniform Act, effective January 2, 1973, was adopted as part of a nationwide effort to achieve uniformity between the drug laws of the various states and federal legislation so as to enable all levels of government to more effectively control the drug abuse problem. Beneficial interaction between the various governmental agencies was clearly contemplated. The Commissioners on Uniform State Laws spoke of such purposes in these terms:

> "A main objective of this Uniform Act is to create a coordinated and codified system of drug control, similar to that utilized at the Federal level, which classifies all narcotics, marihuana, and dangerous drugs subject to control into five schedules, with each schedule having its own criteria for drug placement. This classification system will enable the agency charged with implementing it to add, delete, or reschedule substances

---

[1]. Note should also be taken of the Supreme Court's recent affirmance of convictions under the predecessor to the Uniform Controlled Substances Act. In Kreisher v. State, Del.Supr., 319 A.2d 31 (1974), the constitutionality of convictions for possession of marijuana and hashish was unsuccessfully challenged on four grounds: (1) violation of the rights of privacy and fundamental liberty; (2) impaired exercise of police power; (3) cruel and unusual punishment; and (4) denial of equal protection of the law.

based upon new scientific findings and the abuse potential of the substance." 9 U.L.A., "Commissioners' Prefatory Note", p. 146.

On June 13, 1972, the General Assembly enacted Delaware's Uniform Controlled Substances Act. At Subchapter II of the Act, it adopted the five schedule system suggested by the National Conference of Commissioners on Uniform State Laws. This system contemplates a classification and listing, from Schedule I to Schedule V, in decreasing potential for abuse, of all controlled substances. At the time of enactment, the General Assembly, adopted the federal lists of controlled substances, and specified that they be similarly scheduled in the Delaware Act.[2] It also set forth tests [3] for each schedule whereby the administering agent is to determine the proper classification for future scheduling of substances. At Subchapter III, it set forth requirements for regulating the manufacture, distribution and dispensing of controlled substances to include detailed registration procedures. At Subchapter IV, the General Assembly established a comprehensive system of offenses and penalties for those whose involvement with controlled substances goes beyond that authorized by the Act. Subchapter V speaks to "Enforcement and Administrative Provisions" and Subchapter VI is involved with miscellaneous matters.

In Delaware, the Secretary of the State's Department of Health and Social Services (hereinafter "the Secretary") is charged with administration of the Act. 16 Del.C. § 4711. Among his many tasks is one around which these defendants have centered their argument. It is set forth as the last section of Subchapter II:

"§ 4723. Republishing of schedules.

The secretary shall revise and republish the schedules semiannually for 2 years from the effective date of this chapter, and thereafter annually."

The defendants claim that the Secretary has failed to comply with § 4723 and that this failure to "revise and republish" results in the expiration of the schedules of all controlled substances. They also claim that the Secretary has promulgated regulations for addition, deletion, and rescheduling of substances which are contrary to the tests set forth by the General Assembly (see footnote 4, infra). Therefore, they argue, all prosecutions must cease for lack of a statute to sustain them. Lastly, they claim that what little publication of schedules has taken place under the Act is inadequate to provide fair warning of what is a controlled substance. Thus, they argue, they have been deprived of the due process of law guaranteed them by Article I, § 7 of the Delaware Constitution, Del.C.Ann. and the Fourteenth Amendment to the United States Constitution.

On the other hand, the State contends that the powers and responsibilities of the Secretary under § 4723 are not as broad as the defendants assert; that the Secretary has "revised and republished" as called for by the Act; and that, even if he has not, it is not fatal to the Act or these prosecutions. The State does concede that certain of the Secretary's regulations are invalid and void insofar as they purport that the Secretary has authority to delete and reschedule substances beyond that which he is authorized by the Act. However, the State only views the invalidity of those regulations as further proof of the Secretary's limited role. Lastly, the State points

2. With one exception, the indictments here charge the defendants with violations involving substances (such as cocaine, heroin, methamphetamine, and marijuana) which the General Assembly placed in the schedules at the time of enactment. The one exception is a charge against defendant Dale involving methaqualone. It was placed in Schedule II (16 Del.C. § 4716) on May 29, 1973 when the Governor signed into law an act of the General Assembly to that effect.

3. 16 Del.C. § 4713 sets forth Schedule I tests; § 4715, Schedule II tests; § 4717, Schedule III tests; § 4719, Schedule IV tests; and § 4721, Schedule V tests.

to the inclusion of the substances in question by the General Assembly in the Act, as enacted and made a part of the public record in 58 Delaware Laws, Ch. 424 and the 1972 Supplement to the Delaware Code as satisfying any due process requirement of fair warning.

■ While defendants' position does not lack ingenuity or a certain appeal, it must fail for several reasons.

■ First, the duty to "revise" set forth in § 4723, when read in the context of the entire Act, cannot properly be construed as requiring the Secretary to independently investigate and evaluate every controlled substance on a semiannual basis. The framers of the legislation could hardly have contemplated that any such formidable task should befall a single administrator or agency. Rather, interaction between local, state, and federal drug abuse prevention authorities was anticipated and encouraged. The General Assembly relied on the federal listings when compiling Delaware's initial schedule of controlled substances. Such reliance was not improper. Freimuth v. State, 272 So.2d 473 (Fla. 1972). Furthermore, it would not be improper for the Secretary to look to the scientific findings of other governmental agencies in adding to or changing the schedules, as long as those findings satisfy the tests set forth in the Delaware Act. Commonwealth v. Tarabilda, Pa.Super., 294 A.2d 830 (1972).

It is also important to note here that the Act does not empower the Secretary to delete substances from Schedules I, II, or V. Only within the limited provisions of § 4718(f) and § 4720(c), may he except certain substances from Schedules III and IV. This is a distinct departure from the authority to "add substances to *or delete or reschedule all substances* enumerated in the schedules" (emphasis supplied) allowed

the administering agency by § 201 of the Uniform Act. 9 U.L.A., p. 208. Compare also the authority of the Attorney General of the United States under the federal drug abuse prevention legislation. 21 U.S. C.A. § 811(a).

■ The only conclusion fairly to be drawn is that § 4723 does not empower or require the Secretary to semiannually engage in an independent scientific analysis of all controlled substances with an eye to deletion or rescheduling. Rather, § 4723 calls upon the Secretary to regularly review current medical and scientific data from available sources, see if the substances evaluated therein satisfy the tests established by the General Assembly, and, if so, place those substances on the appropriate schedule. The record indicates that the Secretary has been operating in that manner. It is true that he had promulgated regulations which added to the statutory tests for scheduling and mistakenly presumed a power on his part to delete any substance from any schedule.[4] However, the fact of the matter is that, despite those concededly invalid regulations, no substances were ever deleted, nor were any added, other than according to the statutory guidelines. Hence, no harm was done, and these defendants can find no shelter in this temporary administrative overreaching. The substances involved in these prosecutions never were deleted or rescheduled, and the Secretary has properly performed § 4723's "revise" requirement.

Turning next to defendants' allegation that the Secretary has failed to "republish" the schedules as required by § 4723, the Court faces a much more difficult question. As with "revise", the term "republish" is not defined elsewhere in the Act. What is more, unlike "revise", other sections of the Act do not circumscribe the Secretary's powers with regard to publication.

---

4. Effective February 1, 1973, the Secretary promulgated regulations for the "Addition, Deletion Or Rescheduling Of Substances",

which added test factors beyond those specified in the Act.

The defendants contend that § 4723 requires regular republication of all schedules and their contents in newspapers of general circulation whether or not any changes have been made in those schedules. After these indictments issued, the Secretary instituted such a newspaper publication procedure. Nevertheless, the State maintains that § 4723 is satisfied by the Secretary's earlier practice of making available the lists of controlled substances, as well as subsequent revisions, to all registrants and potential registrants under the Act.

■ The Court is of the opinion that, while a widespread publicity campaign is a worthwhile objective, § 4723 does not require and the Act does not necessarily contemplate any more publication than what the Secretary initially engaged in. Besides publication in various trade and professional journals, the original schedules, as well as any additions to them, were sent to some 1200 individuals and companies including pharmacies, medical and dental practitioners, medical institutions, and manufacturing and distributing concerns. This notification to those most closely concerned with controlled substances and their abuse would seem to satisfy the requirements of § 4723.

Defendants rely on Junghans v. Department of Human Resources, 289 A.2d 17 (D.C.App.1972) to support their argument that publication here was inadequate to satisfy § 4723. In that case the Court of Appeals held that a rule pertaining to public assistance payments was ineffective because it had never been published as required by District of Columbia's Administrative Procedure Act. D.C.Code 1967, § 1–1505(a) (Supp. IV, 1971).

"[W]e construe the *full* requirements of Section 1–1505(a), as dictated by Congress, to be that the notice must afford interested persons an opportunity to be heard on the proposed rule. In order to be afforded that opportunity, the general public must be advised of the cur-rent status of the proposed rule as it stands before the rulemaker." *289 A.2d at 24.*

Here, however, notification of changes in the schedules of controlled substances is regularly sent by the Secretary to those whom the Act would seem to have designated "interested persons", namely, registrants and potential registrants. Thus, the Court continues to believe that the Secretary has complied with § 4723's requirement to "revise and republish".

■ Furthermore, a contrary finding that the Secretary has failed to "revise and republish", would not be sufficient to justify dismissal of indictments against these defendants. This conclusion is inescapable for two reasons. First, failure to "revise and republish" does not mean the schedules of controlled substances or any prosecutions under them, must lapse. Second, failure to satisfy § 4723 does not mean that these defendants were deprived of their due process right of fair warning.

As regards the question of lapsed or expired schedules, defendants ask the Court to hold that Secretarial failure to satisfy § 4723 brings the entire Controlled Substance Act to a screeching halt. Such is simply not the case. In every instance, the substances in question were scheduled as controlled by act of the General Assembly, not the Secretary. As discussed above, the Secretary is, with only strictly limited exceptions, powerless to delete substances from those schedules. If he is powerless to delete from those schedules, he is equally powerless to destroy them by any innocent or intentional failure to perform the administrative revision and republication functions of § 4723.

Defendants point to United States v. Johnson, 53 F.Supp. 167 (D.Del.1943), where the District Court held that the Price Administrator was unable to expand or extend his authority under the Emergency Price Control Act of 1942, 50 U.S. C.A. Appendix, § 904(a) and § 925(b) through promulgation of regulations. The

teaching of that case applies here to invalidate those of the Secretary's regulations which added to the tests for scheduling, as conceded by the State and discussed previously. (Footnote 4, supra). On the other hand, the *Johnson* case also teaches that the Secretary here cannot terminate his responsibilities, much less nullify the entire Controlled Substances Act, by a failure to revise or republish. As District Judge Leahy explained in the clearest of terms:

"Implied authority in an administrative officer to repeal, extend or modify a law may not be inferred from the grant of authority to enforce it." 53 F.Supp. at 167.

Hence, even if this Court were to find (which it does not) that the Secretary has failed to fulfill § 4723, the schedules of controlled substances established by the General Assembly have not expired and these indictments remain viable.

Turning lastly, to the question of fair warning, it does not deserve the weight defendants' emotional argument would claim.

"[T]he Secretary has not provided a fair warning. He has not made the law available to the public, and what he has made available he has released in an extremely un-uniform manner.

The public, the potential criminal, the lawyer, have no way of knowing where or how to look to get the fair warning to which they are entitled." Defendants' Reply Brief at p. 16.

■ With only the exception of methaqualone, every controlled substance involved in these indictments was clearly scheduled in the Delaware Uniform Controlled Substances Act as enacted (58 Del. Laws, c. 424), codified (16 Del.C. § 4701 et seq.), and published (1972 Supplement to the Delaware Code). The General Assembly has not seen fit to repeal this statute. Neither did the General Assembly indicate any intention to repeal when it added methaqualone to the schedules. Compare

State v. McGonigal, Del.Super., 189 A.2d 670 (1963). Furthermore, that addition of methaqualone to the lists of controlled substances received extensive publicity throughout the State in newspapers of general circulation, as well as professional publications. (Supported by Exhibits E through I of the Stipulation of Facts.) The Act's provisions, therefore, remain viable and in full force.

■ Neither must these indictments fail for insufficient specificity. In each count they plainly state both the particular schedule and controlled substance involved. Compare State v. Dally, Del.Super., 272 A.2d 781 (1970).

In Erlin v. United States, 413 F.2d 1036 (9th Cir. 1969), the Court of Appeals was faced with an argument similar to that made by defendants here. Erlin had been convicted of unlawful sales of L.S.D. He sought reversal on due process grounds claiming that he had not received notice of the federal regulation designating L.S.D. as a prohibited drug under 21 U.S.C. § 331(q)(2), § 321(v)(3) and § 333(a). Pointing out that the regulation had been published in the Federal Register a year prior to Erlin's unlawful acts, and that "[t]here is no claim on the part of appellant that he did not have actual knowledge of the regulation", 413 F.2d at 1037, the Court affirmed the convictions in a per curiam opinion.

Here we are not dealing with anything as comparatively obscure as the Federal Register. We are dealing with laws of this State, enacted by the General Assembly, and published according to law. Furthermore, widespread publicity, in the press and other news media, has been given to the dangers of these controlled substances and to the prosecutions of other defendants for their illegal use and possession. Defendants do not claim that they lacked actual knowledge that such substances as cocaine, heroin, marijuana and others involved here were controlled. Neither can

they claim denial of any due process right to fair warning.

For the reasons stated above, defendants' motions for dismissal of the indictments in question must be denied.

It is so ordered.