HARRIS, Judge.
Appellant was convicted of violating the Alabama Uniform Controlled Substances Act and the Court sentenced him to six years imprisonment in the penitentiary. Appellant was represented at arraignment and trial by counsel of his own choice. He pleaded not guilty. After conviction he gave notice of appeal and his bond was fixed at $10,000.00, and he is free on bond pending this appeal.
The evidence presented by the State made out a clear case for the jury on the issue of appellant’s guilt vel non of the possession and sale of marihuana. The thrust of appellant’s defense was that he was entrapped into the commission of the offense by the Sheriff of Coosa County, Alabama. Appellant did not testify in his defense.
The first witness called by the State was Mr. Fred Taylor Noggle who testified that he was employed as a Toxicologist with the State Department of Toxicology and Criminal Investigation at Auburn, Alabama. Mr. Noggle stated his education, experience and qualifications. His qualifications were not disputed or questioned by the defense. He said that during the five years as a Toxicologist he had conducted several thousand tests to determine the contents of articles and material submitted to him for examination and analysis. He further testified that on January 28, 1976, around 2:35 p. m., Sheriff Jasper Fielding personally delivered to him a “sealed plastic evidence envelope which contained six clear plastic sandwich type bags each containing a green-brown vegetable matter,” and that a laboratory analysis of the vegetable matter revealed the “presence of marijuana.” He further testified that State’s Exhibit Number 1 contained the six sandwich type bags and the substances found were all the resins contained in the marihuana plant including tetrahydrocannabinol and other cannabinol substances. He stated that State’s Exhibit Number 1 was in the same condition as it was when he received it from Sheriff Fielding, “with the exception of the identification marks which I put on it and a portion of the material which I removed in the examination.”
Sheriff Jasper Fielding testified that he was serving his sixth year as Sheriff of Coosa County and that Danny Holman was one of his Deputies on January 23, 1976. He stated that he knew Billy Browning and that Browning had no connection with the Sheriff’s Office. He further testified that on the night of January 23,1976, he was at a ball game in Goodwater and he got a radio call that someone wanted to meet him on Highway 40 in a log truck. He drove on Highway 40 and met Billy Browning around 8:00 p. m. between Rockford and Goodwater and had a conversation with him. They parted and the Sheriff returned to the jail in Rockford and had the officers pick up Browning and bring him to the jail where he had another conversation with him. As a result of this particular conversation the Sheriff turned over to Browning and Deputy Holman a shotgun and two pistols to carry to appellant’s home to exchange the weapons for marihuana. Shortly before midnight the Sheriff met Holman and Browning at a prearranged place and received from them six lids of marihuana which he locked in an evidence drawer and later delivered to Noggle at the Toxicology Laboratory in Auburn. The Sheriff never saw the guns again.
*867 The Sheriff further testified that when he turned the weapons over to Holman and Browning he was aware that on information he had received from Browning earlier that night, that if he had some guns, he could acquire some marihuana from appellant. He told Holman and Browning to take the guns and get all the marihuana that appellant would swap for the weapons. The Sheriff identified State’s Exhibit Number 1 as the marihuana he received from Holman and Browning on the night of January 23, 1976. He stated that he did not make any promises, threats, or offer any rewards to Browning to get him to go to appellant’s house on the night of January 23, 1976, to swap the guns for marihuana.
On cross-examination the Sheriff said he knew there was a charge of burglary pending against Browning before he went to appellant’s house, but that he made him no promises whatsoever to get him to go to appellant’s home and swap the guns for marihuana. He stated that the reason that Browning had not been indicted for the burglary was because the man who owned the lake cabin didn’t want to press charges.
Billy Browning testified that he lived in Sylacauga, Alabama, and that appellant was his uncle by marriage and he had known him six or seven years. He further stated that he and Danny Holman met Sheriff Fielding around 11:00 or 11:30 p. m. on January 23, 1976, and that the Sheriff gave them some guns. He said they took the guns to appellant’s home that night and appellant offered them $75.00 for the guns. Browning reminded appellant about the deal they had made that afternoon, and asked him if he would trade marihuana for the guns. Appellant agreed and there were some negotiations as to the quantity of marihuana. Holman wanted eight lids and appellant said he would give them six. Holman then suggested seven lids and appellant stood pat on six and said they could either take six or $75.00 and they traded the three guns for six lids of marihuana. Browning further testified that when they got ready to leave, the appellant said, “I’ll take a thousand dollars worth of guns at the same price.”
Browning identified State’s Exhibit Number 1 as the marihuana he and Holman received from appellant in a trade for the weapons. He stated that he and Holman gave Sheriff Fielding the six bags of marihuana shortly after leaving appellant’s house. He further stated that the exchange of weapons for marihuana was pursuant to an agreement he made with appellant earlier on January 23, 1976.
Browning further testified that prior to going to appellant’s home on January 23, 1976, the Sheriff had not promised him any help or pressured him or threatened him in any way to get him to go to appellant’s home and take Danny Holman with him. He stated that the Sheriff did not give him six lids of marihuana to take to appellant’s home and plant the marihuana on him. He further said that he did not know of his own knowledge where appellant got the six lids of marihuana. Browning admitted that he had recently told a different story from his testimony and that this conflicting statement had been tape-recorded.
On cross-examination he testified that he did not want to testify against appellant and he went to look for him. He saw him on the streets of Sylacauga and appellant asked him to go to a lawyer’s office and tell him that the Sheriff had set him up. Browning told appellant that he wished he could just leave town and appellant said, “Well, Little Bill, I will give you $200.00 just to get out of town.” Browning hesitated and appellant told him, “I will even do better than that. If you will come in here and tell Lawyer-that Jasper Fielding tried to set me up I will give you $500.00.”
Browning further testified that the Sheriff did not give him marihuana to carry and place in appellant’s house. At this point counsel for appellant moved the Court to permit the tape-recorded statement that Browning gave appellant’s lawyer to be played to the jury. After much argument of counsel the Court finally ruled that the statement could be played to the jury. The tape-recorded statement covers 17 pages of *868 the transcript and we do not see the necessity of setting it out in this opinion.
Suffice it to say that the tape-recorded statement given by Browning to appellant’s attorney in the presence of appellant and his wife contradicted the testimony Browning gave on direct examination. In substance the statement is to the effect that the Sheriff gave Browning the marihuana to carry to appellant’s home and later that night the Sheriff turned over a shotgun and two pistols to Browning to take to appellant’s home and swap them for the marihuana that the Sheriff had given to Browning to take to appellant’s home. The statement on the tape indicated that the Sheriff would help Browning on the burglary charge pending against him and would also try to help him on a case against him then pending in the State of Florida.
After the tape was played to the jury, Browning was further questioned by appellant’s counsel and he testified that what he said on the tape was what appellant told him to say. He further testified that the Sheriff had not tried to get him to carry any marihuana over to appellant’s house. He further stated that he had not been threatened by the Sheriff of Coosa County, that if he did not carry the marihuana to appellant’s house that he was going to be indicted for burglary and that he did not feel like that he was in a crack about the pending charge against him.
On redirect examination he testified that he stole a portable television set and carried it to appellant’s house and sold it to him for $20.00 and after the tape was made, he said that appellant paid him $170.00 and that he left Alabama and went to Longview, Texas, and decided that he would just come back to Alabama because he realized that if he did not come back, that appellant was going to get out of the marijuana charge and that he was going to prison and he did not know how long he was going to have to serve but he did not want to see appellant get out and walk away. He further testified that appellant told him he was going to give him $500.00 to testify that the Sheriff had set him up but he never got the $500.00.
Mr. John Daniel Holman, also known as Danny Holman, testified that he was a Deputy Sheriff of Coosa County; that on January 23,1976, the Sheriff turned over to him and to Billy Browning a shotgun and two pistols and they carried the weapons to appellant’s home for the purpose of swapping the weapons for marijuana. He stated that when they arrived at appellant’s home, it was around 11:30 p. m. on January 23, 1976, and a conversation took place in regard to the guns in which appellant said he would take the guns and he asked appellant to make them an offer. Appellant told him in the presence of Browning that he would give them six lids of marijuana in exchange for the weapons and that he told appellant that they would take eight lids. Appellant said he could not do that. Then Holman asked if he would make it seven and appellant replied that he couldn’t do that but that he would give six lids of marijuana or $75.00 in cash or just to go on and forget about it; that Holman then told him he would take the six lids. That all of this conversation took place in the kitchen of appellant’s home. He said the shotgun was lying on the counter top bar in the kitchen and Browning had the two pistols in his pocket; that Browning took the pistols out and appellant looked at them and they were laid down on the counter by the shotgun and appellant put six plastic bags of marijuana down on the counter by the weapons. Holman further testified that he took three lids or bags of marijuana and Browning took the other three. Holman identified State’s Exhibit 1 as containing the six bags of marijuana that appellant gave them in exchange for the weapons. That after this transaction had taken place, he and Browning left and that after they got in the truck, he put the three bags of marijuana that he had in his possession in a paper sack and took the three plastic bags that Browning had and put them in the same paper sack.
He further testified that they then met the Sheriff shortly before midnight and turned the six bags of marijuana over to him. He identified State’s Exhibit Number *869 2 as the shotgun and the two pistols that he and Browning had carried to appellant’s home and which were traded for the six bags of marijuana.
Sheriff Jasper Fielding was recalled as a witness by the State and testified that in February of 1976, appellant came to his office and had a conversation with him, that prior to this conversation the Sheriff advised him of his constitutional rights and that there were no threats or promises or other inducements made by him to appellant to get him to make a statement, that appellant told him that he knew that the Sheriff had him, saying, “I know what was going on, you done caught me and I want to get out of it the easiest way I can.” Appellant admitted that the marijuana was his. At this point the State rested its case and there was no motion made by appellant’s counsel to exclude the State’s evidence.
Appellant offered the testimony of Frank Browning who was a brother-in-law of appellant. He testified that he was at appellant’s home on January 19, 1976, and that he saw Billy Browning there; Billy had a portable television. He testified that when Billy saw him, he picked up the television and started to run. He further testified that he went in the kitchen and saw two brown paper bags on the breakfast bar and that one of the bags had M & M’s candies in it, and the other bag had what appeared to be marijuana in it. He was shown State’s Exhibit 1 and testified that these were the plastic bags and one of the brown paper bags that he saw in appellant’s kitchen on the night of January 19. He further testified that he did not know who the six bags of marijuana belonged to that he saw in the kitchen of appellant’s home on January 19.
Appellant offered the testimony of other members of his family who corroborated substantially the testimony of Frank Browning and they assumed that the marijuana was brought to appellant’s home by Billy Browning but they were not certain about that.
Appellant’s wife testified in his behalf and stated that Billy Browning brought the marijuana to their home on the night of January 19, 1976, and that the marijuana was left in their home. She further testified that she was present in the car with appellant and his lawyer at the time that Billy Browning made his statement that was put on tape and that there was no mention of money and no money was passed in her presence. She said that Billy Browning stated that he would make a statement in front of a lawyer as to what he had done to get appellant into trouble because he felt the Sheriff was going to turn around and indict him and he wanted to help appellant out and that’s the reason he made the tape-recording; that Billy Browning further stated that he tried to get appellant caught so that he could get himself out of trouble.
In sum, the testimony offered on behalf of the appellant was designed to impeach the testimony of both Billy Browning and Danny Holman.
The State produced evidence to show that before appellant entered into the agreement to trade the marihuana for the weapons he turned on a police monitor or scanner to determine the location of the law enforcement officers. He heard the officers transmitting messages that they were in the Equality Community of Coosa County and being satisfied that no officers were in the vicinity of his home he went to the kitchen of his home with Browning and Holman where the trade was completed.
The rule is that extrajudicial confessions are prima facie involuntary and inadmissible and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary and unless it so appears, it should not be admitted. Myhand v. State, 259 Ala. 415, 66 So.2d 544; Phillips v. State, 248 Ala. 510, 28 So.2d 542; Hines v. State, 260 Ala. 668, 72 So.2d 296; Duncan v. State, 278 Ala. 145, 176 So.2d 840. Womack v. State, 281 Ala. 499, 205 So.2d 579; Bass v. State, 55 Ala. App. 5, 312 So.2d 576; Botsford v. State, 54 Ala.App. 482, 309 So.2d 835.
Prior to talking to appellant, who voluntarily came to the Sheriff’s Office, the *870 Sheriff read him his constitutional rights and appellant said he understood his rights. The State introduced evidence to show that no threats were made against the accused; that he was not physically mistreated; no promises of any kind were made to him; that no reward was offered or held out to him to get him to confess, and no inducements of any kind were made to him. No evidence was offered by the defendant to the contrary. We hold that appellant’s confession that the marihuana belonged to him was properly admitted into evidence for the consideration of the jury. Luschen v. State, 51 Ala.App. 255, 284 So.2d 282.
In McCarroll v. State, 294 Ala. 87, 312 So.2d 382, the Supreme Court said:
“The defense of entrapment is not available to a defendant who denies that he committed the offense charged. Rodriquez v. United States, 227 F.2d 912 (1955, CA 5th Cir., Texas). The defense rests on the defendant’s admitting the deed but disclaiming the thought. Lindsay v. State, 41 Ala.App. 85, 125 So.2d 716 (1960).
* * * * * *
“While the defense of entrapment may be raised when a defendant pleads not guilty, the assumption is that the act charged was committed. Rodriquez. In this case, one of the bases of the defense of entrapment — admission of the sale of heroin — was absent. Therefore, entrapment was not available to McCarroll as a defense.”
In Warren v. State, 52 Ala.App. 35, 288 So.2d 817, this Court held that in the light of the fact that defendant’s evidence showed there was no sale of marihuana there could not have been an entrapment.
Notwithstanding the lack of evidence showing a sale of marihuana by appellant the trial court fully charged the jury on the law of entrapment. The Court also gave the following written charge requested by appellant:
“The Court charges you ladies and gentlemen of the jury that if you find from the evidence that Sheriff Fielding originated the idea of suggesting to the defendant Pike that he sell or trade the marijuana, as charged in the indictment, and that such idea or scheme originated entirely with said Sheriff in an effort to catch Robert Pike in the act of selling marijuana or the attempt thereof, you must find the defendant not guilty.”
Conflicting evidence presents a question for the jury as to the defendant’s guilt. The jury resolved this issue against the appellant. Morris v. State, 47 Ala.App. 132, 251 So.2d 629; Miller v. State, 39 Ala. App. 584, 105 So.2d 711.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed. AFFIRMED.
All the Judges concur, except CATES, P. J., not sitting.