STATE *vs.* CURTIS L. SAMUELS.
*Criminal Law—Homicide—Murder—Circumstantial Evidence— Reasonable Doubt.*

1. Evidence is none the less effective because it is circumstantial, if it be consistent, connected and conclusive. But circumstantial evidence to warrant conviction must be entirely satisfactory and of such significance, consistency and force as to produce conviction in the minds of the jury of the guilt of the accused beyond a reasonable doubt. Where the evidence is circumstantial, the jury must be fully satisfied, not only that those circumstances are consistent with the prisoner's having committed the act charged as constituting the crime, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the prisoner was the party. They must be such as to exclude any other reasonable hypothesis or conclusion.

2. A reasonable doubt does not import, in contemplation of law, a mere possible doubt; because everything relating to human affairs and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which after entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot feel an abiding conviction to a moral certainty of the truth of the charge.

*(January 7, 1904.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Herbert H. Ward*, Attorney-General, and *Robert H. Richards*, Deputy Attorney-General, for the State.

*Horace G. Eastburn* for the defendant.

At a Court of Oyer and Terminer held in New Castle County in January, 1904, the defendant above named was put on trial upon an indictment charging that on the third day of November, 1903, he, the said defendant, shot and killed one Pasquale Diabelle near Delaware City, in said county, and that he was guilty of MURDER OF THE FIRST DEGREE and of felony.

At the trial the State sought to convict the prisoner wholly upon circumstantial evidence which was to the following effect:

That on the night of the murder Samuels borrowed a gun and left it at the store of one Mr. Bowers in Delaware City and sought out Di Abelle and walked up the street with him, on the way meeting one John Arros, and after having a conversation, walked down the street again, passing the said Arros who heard Di Abelle say "Good-night, Sam," and Samuels' reply "Good-

night, Parm." That they then parted and Di Abelle started towards the railroad tracks leading to the marsh; that Samuels was next seen by a witness on the steps of Bowers' store, where he procured his gun and walked along the street towards the same railroad track which DiAbelle had traversed. That shortly thereafter—about ten o'clock—another witness heard several reports of a gun out on the marsh near the river bank in the direction in which the dead body of Pasquale DiAbelle was found the next day, death having resulted, according to the evidence, from a gun-shot wound. Another witness testified that he was in his cabin down on the river in front of Delaware City, and about the same time as fixed by the other witnesses, saw the flash and heard the report of a gun or fire-arm, and at the same time heard someone say: "Oh, Oh, Sammy, don't shoot."

As supplying a motive for the murder, the State offered testimony to the effect that the defendant Samuels, after he had been arrested for the crime and while in prison, wrote a letter to his wife in which he said: "Don't let anybody know you have any," referring to money which he had secreted in a wallet in a closet in his home; that Samuels received but $45 per month working on a dredging scow and that after the murder he had spent about $105. That DiAbelle, the murdered man, had money in his belt which formed a part of his underclothing, which belt was found cut open and the money gone.

Upon the above facts the State contended that it had made out a case against the defendant of murder in the first degree.

The defense set up and contended for was a complete alibi. Defendant's counsel contended that the State had not proved that Samuels knew that DiAbelle had money in his belt; nor that he had walked along the railroad or towards the river bank with the Italian towards the marsh and there shot the Italian. The defense produced the watchman at the railroad station, past which the defendant must have gone on the railroad track in order to reach the place of the killing, and said watchman testified that he was on duty constantly on the night of the murder and that at no time during the night had Samuels passed the railroad station on the tracks in question. Defendant's counsel

further contended that Samuels was not impeached in his testimony, and traced by the defendant and other witnesses the defendant's movements throughout the evening from the time he got back from down the river, at six o'clock, where he had been working for the dredging company, up until after the time of the shooting, and claimed that he had thereby established a complete alibi, and that when the defendant said "Good-night" to the Italian, he saw him no more that night; that after he had turned up the street towards the railroad track upon which DiAbelle had proceeded, he turned off that street at the end of the square and went into a baker's shop and bought bread, and from there went to his home where he stayed during the rest of the night. That the gun in question he had borrowed for the purpose of going gunning and that the same was taken direct to his home from Bowers' store and was not taken from his home any time thereafter during the night. Evidence was also adduced to show the source from which the defendant got the money he had after the murder, and how much he spent.

LORE, C. J., charging the jury:

Gentlemen of the jury:—The indictment charges that Curtis L. Samuels the defendant, on the third day of November, 1903, shot and killed one Pasquale DiAbelle, near Delaware City, in this county; and that he is guilty of murder of the first degree and of felony.

The defendant raises no question as to the degree of the crime, but stands upon the defense that he did not kill DiAbelle and therefore is not guilty.

The crime charged, viz., murder of the first degree, consists in the killing of a human being with express malice aforethought, or in perpetrating or attempting to perpetrate any crime punishable with death. That is to say, in general, when life is maliciously taken with a sedate deliberate mind and formed design. Such design may be shown from the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, a preconcerted hostile meeting, privily lying in wait, a previous quarrel or grudge, antecedent menaces or threats, or in the preparation of means to effect such design or intent.

In order to convict the defendant of the crime charged, it is incumbent upon the State to show to your satisfaction, beyond a reasonable doubt, that the defendant, Curtis L. Samuels, killed the deceased man Pasquale DiAbelle, and that when he so killed him it was with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death.

The burden of proving every material element of the crime charged in the indictment rests upon the State.

Every person accused of crime is presumed by the law to be innocent, and such presumption of innocence remains as his protection, until he is proved to be guilty.

The evidence in this case is entirely of a circumstantial character. No witness has been produced who saw DiAbelle killed, nor is there any direct and positive evidence as to how, when, where or by whom he was killed; but a number of circumstances have been shown which, taken together, it is claimed on the part of the State, fixes the guilt upon the defendant.

The evidence is none the less effective because it is circumstantial, if it be consistent, connected and conclusive. It has been well said by this Court that "circumstantial or presumptive evidence is receivable in both civil and criminal cases. The affairs and business of the world could not well be carried on without recognizing the admissibility of this description of evidence. In criminal matters the necessity of admitting it is indeed much more manifest than in civil matters. Crime usually seeks secrecy and the possibility of proving the offense charged by direct or positive evidence is much more rare and difficult in criminal cases than in civil cases. The universal experience of those engaged in the administration of justice shows the absolute necessity of admitting evidence of a circumstantial character and relying on it, in forming our conclusions in regard to the guilt or innocence of the accused person; but circumstantial evidence to warrant a conviction must be entirely satisfactory and of such significance, consistency and force as to produce conviction in the minds of the jury of the guilt of the accused beyond a reasonable doubt. The great rule on this subject is this;

that where the evidence is circumstantial, the jury must be fully satisfied, not only that those circumstances are consistent with the prisoner's having committed the act charged as constituting the crime, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the prisoner was the party. They must be such as to exclude any other (reasonable) hypothesis or conclusion."

Of the circumstances and facts proved by the witnesses in this case, as well as the credit to be given to each witness, you are the sole judges. In reaching your verdict, you must be governed exclusively by the evidence in this case, and only by what you have heard and seen in this trial in this court-room, and from no other sources whatever.

The degree or quantity of evidence necessary to justify a verdict in criminal cases differs from that in civil cases. In civil cases the jury may find for the party in whose favor there is a preponderance of evidence, although it may not be free from reasonable doubt. But in criminal trials the accused is entitled to the benefit of the legal presumption in favor of innocence, which in doubtful cases is always sufficient to turn the scales in his favor. It is therefore a rule of criminal law, that the guilt of the accused must be fully proved, and neither a preponderance of evidence, nor any weight of preponderating evidence is sufficient, unless it produces full belief of the fact to the exclusion of all reasonable doubt in the minds of the jury. A reasonable doubt, however, does not impcrt in contemplation of law a mere possible doubt; because everything relating to human affairs and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which after entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot feel an abiding conviction to a moral certainty of the truth of the charge. "The burden of proof is upon the prosecutor. All the presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent of the offense charged until he is proved to be guilty. . If upon such proof there is reasonable doubt remaining, the accused is enti-

tled to the benefit of it by acquittal, for it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary, but the evidence must establish the truth of the facts to a reasonable and moral certainty; a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it." If in this case you entertain such a reasonable doubt of the guilt of the defendant, your verdict should be not guilty.

Verdict, not guilty.