Torshiro PRIEST, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Nos. 272, 2004, 273, 2004.

Supreme Court of Delaware.

Submitted: April 20, 2005.
Decided: July 5, 2005.

Sandra W. Dean, Office of the Public
Defender, Dover, Delaware, for appellant.

John Williams, Department of Justice,
Dover, Delaware, for appellee.

Before STEELE, Chief Justice,
HOLLAND, BERGER, JACOBS,

Justices, and NOBLE, Vice Chancellor,* constituting the court en banc.

STEELE, Chief Justice, for the Majority.

Torshiro K. Priest appeals his convictions, by a Superior Court jury, of Maintaining a Vehicle for Keeping Controlled Substances and multiple counts of the compound offense of Possession of a Firearm During the Commission of a Felony, claiming that the trial judge erred by denying his motion for judgment of acquittal. In this Opinion we hold that to sustain a finding of guilt on a Maintaining a Vehicle charge, the State must offer evidence of some affirmative activity by the defendant to utilize the vehicle to facilitate the possession, delivery, or use of controlled substances. Because the record contains no evidence that Priest engaged in any of these activities, we vacate his Maintaining a Vehicle conviction. We also hold that the jury's failure to convict on either the predicate felony charges or any lesser-included felonies negates, as a matter of law, the first element of Possession of a Firearm During the Commission of a Felony—that a defendant commit either the predicate felony or a lesser-included felony—and thus precludes a conviction of the compound PFDCF offenses. We must, therefore, vacate Priest's PFDCF convictions. Accordingly, we reverse the judgment of the Superior Court and remand with instructions to enter a judgment of acquittal on the Maintaining a Vehicle and PFDCF counts.

## I.

In July 2003, Deborah Powell drove to the Manchester Square Apartments in Dover looking for a friend. On arriving at the apartment complex, Marvin Fletcher approached Powell and asked to borrow her car. Fletcher, who was seeking transportation to buy crack cocaine, promised Powell a small amount of money or cocaine in return for the use of her car. Powell refused to lend Fletcher her vehicle, but she did agree to drive Fletcher to a nearby fast-food restaurant where Powell thought that Fletcher would buy drugs. Priest, who was not present during this conversation, arrived some time later and joined Fletcher in Powell's car. With Fletcher sitting in the front passenger seat and Priest in the rear, Powell drove the two men to the restaurant.

While conducting surveillance at the restaurant, Delaware State Police Officer John Samis watched Powell's vehicle enter the parking lot. Samis observed Fletcher leave the car and enter the restaurant. On returning to the car less than a minute later, Fletcher told Powell that "they're not here." Throughout this exchange, Priest said nothing of consequence.

Shortly thereafter, Samis approached Powell's car. Fletcher, recognizing the undercover vehicle, told Powell to leave the area quickly and told Priest to run. Neither Powell nor Priest, however, attempted to escape. As the officer drew closer, Powell heard the glove box close and a heavy item fall to the floor of the vehicle. Powell also observed Fletcher fumbling with an unknown item, and she saw Priest wedge another object in the cushion of the backseat.

After searching Powell's car, Samis and other officers found a digital scale in the front passenger-side door pocket and 18.8 grams of crack cocaine in the glove box. In the backseat cushion, Samis discovered a loaded handgun. The officers then arrested the three occupants of the vehicle. Authorities later indicted Priest and Fletcher on twelve counts related to the

* Sitting in designation pursuant to Del. Const. Art. IV § 12.

incident, including Trafficking in Cocaine, Possession with Intent to Deliver, and Maintaining a Vehicle for Keeping Controlled Substances. A charge of Possession of a Firearm During the Commission of a Felony accompanied each of these three predicate offense charges. Priest and Fletcher were tried jointly in the Superior Court. Powell was also indicted for several serious felony offenses but entered into a plea agreement in exchange for her testimony against Fletcher and Priest.

After trial in March 2004, a jury acquitted Priest of the charges of Trafficking and Possession with Intent to Deliver. The jury found Priest guilty of all other charges, including the count of Maintaining a Vehicle and the ancillary PFDCF charges that accompanied the drug charges. The jury found Fletcher guilty on all counts except an unrelated firearms charge.

After the jury returned its verdict, Priest and Fletcher jointly moved for judgment of acquittal on those counts. In May 2004, the trial judge denied the motion.[1] We rejected an appeal by Fletcher in March 2005.[2] Priest now appeals, claiming that the trial judge erred by denying his motion for judgment of acquittal.

## II.

Priest first claims that the State failed to present sufficient evidence to support the Maintaining a Vehicle count and its accompanying PFDCF charge. Priest claims that because the jury acquitted him of the drug offenses, he was not in constructive possession of the drugs, nor could he be considered an accomplice to Fletcher's conduct. Priest also asserts that Fletcher alone solicited Powell for the use of her vehicle. On these facts, Priest argues that he did not, as a matter of law, Maintain a Vehicle for the delivery of drugs. We review *de novo* the trial judge's denial of Priest's motion for judgment of acquittal to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find Priest guilty beyond a reasonable doubt of all the elements of the crime.[3]

### A. Delaware "Maintaining a Vehicle" Jurisprudence

To further the "nationwide effort to achieve uniformity between the drug laws of the various states and federal legislation,"[4] the General Assembly enacted Delaware's version of the Uniform Controlled Substances Act in June 1972.[5] By so doing, the General Assembly also sought to combat the ills of drug abuse more effectively and to encourage cooperation between different governmental agencies.[6] Title 16, Section 4755(a)(5), which is Delaware's version of Section 402(a)(5) of the

1. *State v. Fletcher,* 2004 WL 1284214, 2004 Del.Super. LEXIS 178 (consolidated with *State v. Priest* ).

2. *Fletcher v. State,* 2005 WL 646841, 2005 Del. LEXIS 124.

3. *Hardin v. State,* 844 A.2d 982, 989 (Del. 2004).

4. *State v. Gula,* 320 A.2d 752, 753 (Del.Super.Ct.1974).

5. 16 *Del. C.* §§ 4701–4796.

6. *Gula,* 320 A.2d at 753–54, *citing* NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS, UNIFORM CONTROLLED SUBSTANCES ACT, prefatory note (1970) [hereinafter UCSA]. *See also* Ana Kellia Ramares, Annotation, *Forfeitability Of Property Under Uniform Controlled Substances Act Or Similar Statute Where Amount Of Controlled Substance Seized Is Small,* 6 A.L.R.5TH 652 (2005) (describing goal of intergovernmental agency cooperation to combat drug abuse as "interlocking trellis").

original model UCSA, states that it is a crime for a person:

> [K]nowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place which is resorted to by persons using controlled substances ... for the purposes of using these substances or which is used for keeping or delivering them.... [7]

The only difference between Delaware's Section 4755(a)(5) and UCSA Section 402(a)(5) is that in our statute the word *chapter* replaced the word *act* and, in the final clause, the word *delivery* replaced the word *sell*. The word *maintain* is left undefined in the statute.[8]

In recent years, this Court and the Superior Court have considered Section 4755 on several occasions. In *State v. Rhinehardt,* the Superior Court addressed the interpretation of the phrase *keep or maintain.*[9] Rhinehardt was convicted for maintaining a vehicle for drug use, in addition to other drug charges arising out of a single incident where police had found illegal drugs in his car. At his bench trial, Rhinehardt contended that "maintaining" a vehicle differed conceptually from "using" a vehicle. Rejecting this claim, the trial judge found that a defendant maintains a vehicle by "having the substantial use, alone or in conjunction with another person, of a motor vehicle for the purpose of storage, transportation[,] and substantial

use of drugs." [10] Rhinehardt did not appeal.

In 1991 we considered the required scope of a defendant's "use" of a vehicle in *Lonergan v. State.*[11] Lonergan challenged the sufficiency of the evidence that underlay his conviction of Maintaining a Vehicle. Lonergan claimed that a "single incident of transporting drugs in a vehicle is insufficient to satisfy the statutory requirement of maintaining, and that the State must establish a continuing illicit operation before liability will attach." [12] Rejecting this argument, we held that:

> [I]t is our belief that the language of this section should be interpreted broadly to include a single incident. The obvious purpose of the statute is to discourage the use of motor vehicles in the transportation of drugs. That purpose is not served by exempting individual violations.[13]

Based on the "obvious purpose of the statute," we held that a single incident of transporting drugs in a vehicle, without any additional evidence tending to establish an ongoing pattern, can suffice to support a maintaining charge.[14]

In *McNulty v. State,* however, this Court overturned a Maintaining a Vehicle conviction on the grounds of insufficiency of evidence.[15] A jury convicted McNulty of the Maintaining a Vehicle charge, along with charges of trafficking and possession. Police had conducted surveillance of McNulty's mother in an attempt to verify a

---

**7.** 16 *Del. C.* § 4755(a)(5); ·UCSA § 402(a)(5) (1970) (current version at USCA § 402(f) (1994)).

**8.** *See* 16 *Del. C.* § 4701 (defining terms of the act).

**9.** 1990 WL 9509, 1990 Del.Super. LEXIS 9.

**10.** *Id.* at *1, 1990 Del.Super. LEXIS at *1–2.

**11.** 590 A.2d 502 (Del.1991) (TABLE); 1991 WL 57128, 1991 Del. LEXIS 101.

**12.** 1991 WL 57128, at *4, 1991 Del. LEXIS 101, at *12.

**13.** *Id.* at *4–5, 1991 Del. LEXIS at *13.

**14.** *Id.*

**15.** 655 A.2d 1214 (Del.1995).

report that she was selling drugs. The police observed McNulty enter a car with three other persons after having a conversation with his mother. One of the occupants carried drugs. The police followed the car and saw McNulty, in the back seat, "ducking back and forth and looking back at [the police]."[16] The officers then arrested all four occupants. At trial the State proved that each defendant knew that there were drugs in the car and that McNulty was critical to the drug deal because he alone was able to identify the buyer.

On appeal, the State contended that because McNulty's presence was critical to the drug deal's success, the jury properly convicted McNulty as an accomplice. We reversed the maintaining charge, finding that the "evidence relating to McNulty's exclusive ability to identify the buyer has no relevance to McNulty's having facilitated the commission of the offense" of knowingly maintaining a vehicle for drug dealing.[17] Although we implicitly assumed the Lonergan "single incident" definition, we found that the fact that McNulty personally knew a party to the transaction, without more and whatever might be its effect on accomplice liability for a drug possession offense, could not "facilitate" the other

party's knowing maintenance of a vehicle for drug dealing.

In *Watson v. State*, we decided another sufficiency of the evidence claim.[18] Watson, a passenger, argued that because the driver of the car admitted ownership of the drugs, he (Watson) could not be convicted of Maintaining a Vehicle. After stating that "[p]roof of a single incident of transporting drugs in a vehicle meets the statutory requirement,"[19] we held that proof of constructive possession is sufficient to warrant a conviction for Maintaining a Vehicle. Finally, in the companion to this case, *Fletcher v. State*, we considered Fletcher's maintaining conviction.[20] Distinguishing *McNulty*, we found that both Fletcher's control of the drugs and the conduct of the driver constituted "significant evidence of [Fletcher's] direct involvement" in maintaining the vehicle for keeping a controlled substance.[21]

## B. Priest's Claims

■ Starting with *Lonergan*, each of these cases, either implicitly or expressly, reaffirmed the principle that Section 4755 requires only that the State prove a single instance of possession or use of a controlled substance in connection with a vehicle.[22] In these cases, the critical bench-

---

16. *Id.* at 1215.

17. *Id.* at 1219, *citing* 11 *Del. C.* § 271(2)(b) (defining accomplice liability) (quotation marks omitted).

18. 755 A.2d 390 (Del.2000) (TABLE); 2000 WL 975050, 2000 Del. LEXIS 258.

19. 2000 WL 975050, at *2, 2000 Del. LEXIS 258, at *6.

20. 2005 WL 646841, 2005 Del. LEXIS 124.

21. *Id.* at *3–4, 2005 Del. LEXIS at *10.

22. We recognize that most, if not all, other UCSA jurisdictions reject the "single occurrence" approach that Delaware endorses.

*See, e.g., People v. Griffin*, 235 Mich.App. 27, 597 N.W.2d 176, 180–81 (1999) (holding that defendant must exercise authority or control continuously for an appreciable period of time); *State v. Mitchell*, 336 N.C. 22, 442 S.E.2d 24, 30 (1994) (holding that "to keep" denotes "not just possession, but possession that occurs over time"); *Dodd v. State*, 879 P.2d 822, 828 (Okla.Crim.App.1994) (rejecting single, isolated instances of use, possession, or sale of controlled substances in connection with vehicle); *Barnes v. State*, 255 Ga. 396, 339 S.E.2d 229, 234 (1986) (determining that possession of limited quantities of drugs within a building, without more, is insufficient to support a maintaining conviction); *People v. Holland*, 158 Cal.App.2d 583, 322 P.2d 983, 987 (1958) (holding that to consti-

mark for determining the sufficiency of the evidence in a Maintaining a Vehicle prosecution has been the degree of the defendant's control or use of the vehicle in connection with the possession of drugs.

These principles applied, Priest's Maintaining a Vehicle conviction must be reversed. The record reflects that Priest took no part in the original conversation between Fletcher and Powell, and that Priest said nothing to either the driver or front-seat passenger throughout the car trip except that Powell "talked too much." The evidence shows only that Priest was present in the car while Fletcher attempted to buy drugs. While these facts might arguably be sufficient to support some type of drug possession charge, they do not establish that Priest *knowingly* kept or maintained a vehicle "used for keeping or delivering" controlled substances. The crucial inquiry is whether Priest knew that he was using the car to facilitate Fletcher's attempted drug deal, not whether Priest knew only that Fletcher was about to buy drugs, with Priest by happenstance being present in the car alongside Fletcher. Although it is possible to imagine a scenario where a passenger's actions might adequately demonstrate his knowledge that the vehicle was kept or maintained for illegal drug activity, the facts here do not support that scenario. Therefore, we vacate Priest's Maintaining a Vehicle conviction and its associated PFDCF conviction.

### III.

 Priest next argues that the jury's finding of guilt on the other PFDCF charges is legally and factually inconsistent with the jury's decision not to convict him of the underlying felony charges of Trafficking and Possession with Intent to Deliver. Priest claims that his convictions of the PFDCF charges must be vacated because as a matter of law the jury's acquittal on the predicate offenses negates the factual element of the weapons charges of having committed a felony while possessing a firearm. Priest therefore contends that the trial judge erred by denying his motion for judgment of acquittal on the PFDCF counts. We review *de novo* the denial of a motion for judgment of acquittal to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[23]

### A. Jurisprudential Background

 Under Delaware law, "[a] person who is in possession of a firearm during the commission of a felony is guilty of possession of a firearm during the commission of a felony."[24] To obtain a conviction of that crime, the State must prove two elements beyond a reasonable doubt: a defendant's commission of a specific felony, and his possession of a firearm during

tute the offense of "open[ing] or maintain[ing] any place for the purpose of unlawfully selling, giving away, or using any narcotic," there must be some purpose of continuity in the use of the place for the proscribed illegal conduct) (citation omitted). *See also People v. Shoals,* 8 Cal.App.4th 475, 10 Cal.Rptr.2d 296, 304 (1992) ("Perhaps by emphasizing one of the listed factors [beyond simple possession,] respondent is suggesting that possession of a large quantity of narcotics is suffi-

cient to establish the crime of 'maintaining a place.' If so, we disagree."). But since the record is devoid of *any* evidence supporting the proposition that Priest knowingly maintained a vehicle for keeping a controlled substance, we have no occasion to reassess our position vis-à-vis the other states.

23. *Couch v. State,* 823 A.2d 491 (Del.2003).

24. 11 *Del. C.* § 1447A(a).

the commission of that felony.[25]

Beginning with *Brooks v. State*,[26] a case where the defendant faced a single weapons charge with no predicate offense pending, our precedent has rejected, in a variety of contexts, the requirement to obtain a jury verdict convicting the defendant of a predicate felony, even where the defendant is charged with a predicate felony in the indictment. Specifically, we have interpreted the PFDCF statute and its companion—Possession of a Deadly Weapon During the Commission of a Felony[27] ("PDWDCF")—to require only that "the weapons offense occur during the commission of the felony."[28] We first stated this view in *Brooks* where the State had indicted the defendant for the firearms charge alone. In *Brooks* the defendant did not face a separate charge for an underlying felony. In a later case, we applied the *Brooks* language where a jury refused to convict on the predicate felony or a lesser-included felony, and ruled that there is "no requirement that a defendant be convicted of *the* underlying felony in order to uphold a firearm offense."[29]

Priest's argument implicates a fundamental tenet of criminal law that guides our review in this case: the General Assembly's declaration that "[n]o person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."[30] Here a grand jury—

presented with an indictment charging a defendant with the commission of particular predicate offenses—returned a true bill for PFDCF charges predicated on the commission of those specifically charged offenses. Thereafter, a petit jury unequivocally found Priest not guilty of those charged predicate offenses, yet still convicted him of the related compound offenses. As a result, the petit jury reached a not guilty verdict on the predicate offense, which negated the essential element of committing the specific felony charged in the grand jury's indictment, while at the same time the jury reached a guilty verdict on the compound weapons offense that charged the commission of that very same felony as an essential element. The verdicts are inescapably inconsistent.

Our analysis of inconsistent jury verdicts has in some cases been guided by principles of jury lenity. In other cases our analysis has involved independent consideration of the sufficiency of the evidence, relying on language from cases where the jury did not render inconsistent verdicts. *Brooks*, for example, involved a juvenile defendant who was tried in the Superior Court on a single count of PDWDCF.[31] There, we stated that the "record is clear that Brooks aided [a codefendant] in the commission of the robbery and the weapons offense."[32] In a one

---

**25.** *Cf. Lewis v. State*, 2004 WL 3220296, 2005 Del. LEXIS 90 (interpreting "deadly weapon" companion statute).

**26.** 367 A.2d 638 (Del.1976).

**27.** *See* 11 *Del. C.* § 1447(a) ("A person who is in possession of a deadly weapon during the commission of a felony is guilty of possession of a deadly weapon during the commission of a felony.").

**28.** *Brooks,* 367 A.2d at 640.

**29.** *Brown v. State*, 729 A.2d 259, 266 (Del. 1999) (emphasis added).

**30.** 11 *Del. C.* § 301(b). In this statute, the General Assembly chose to codify what is widely recognized as a federal constitutional mandate. *See generally In re Winship*, 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("[P]roof of a criminal charge beyond a reasonable doubt is constitutionally required.").

**31.** *See* 367 A.2d at 639.

**32.** *Id.*

paragraph disposition, we found that since "there is no question that the robbery was committed ... and that the weapon was used in commission of [that] felony," the record established the elements of the PDWDCF statute.[33] Because there was no pending predicate charge for the jury to consider, the jury's factfinding and verdict in *Brooks* could not be inconsistent.

Although in *Brooks* the jury heard facts at trial that supported the commission of an underlying felony charged as an element of the weapons offense, no separate, distinct felony charge was submitted on which the jury could have rendered a not guilty verdict. Therefore, in *Brooks*, unlike this case, the jury could not have returned an inconsistent verdict, nor could it have made an underlying factual finding that conflicted with any element of the PDWDCF charge. Consequently, we conducted a traditional sufficiency-of-the-evidence review, as would have occurred in any appellate review of a single multi-element criminal charge. Ironically, *Brooks*, a case where no inconsistent verdict was possible, spawned a line of decisions, each quoting language from the *Brooks* opinion, where juries, in fact, did return inconsistent verdicts.

*Brown v. State* was such a case. In *Brown*, a jury acquitted the defendant of the specific predicate felonies underlying several PFDCF charges, but convicted him of thirteen other felonies. In those circumstances, we found that the inconsistency in the verdict could be explained by jury lenity, citing *Brooks* (which involved inapposite facts) for the proposition that

jury lenity can explain a compound-predicate inconsistency on the basis that "there is no requirement that a defendant be convicted of the underlying felony...."[34] Although the jury had rendered an inconsistent verdict, it had convicted the defendant of thirteen other felonies. Therefore, we had no occasion to scrutinize more deeply the applicability of the PFDCF statute or the extension of our language in *Brooks* to cases not presenting the unique *Brooks* facts. Instead, we decided *Brown* on principles of jury lenity. Consequently, we did not address the central question presented here: whether after an acquittal of *all* predicate charges, the weapons statutes permit appellate review of the sufficiency of the evidence heard by the jury and to conclude therefrom that a compound-charge conviction should be affirmed.[35]

*Brown* and *Brooks* illustrate that the common law of this State as applied to inconsistent verdicts evolved in two different ways. On the one hand, we have applied principles of jury lenity to prevent a reviewing court from upsetting inconsistent verdicts between predicate and compound offenses. These cases all involved some type of underlying conviction.[36] On the other hand, in cases in which there was no jury lenity analysis at all, this Court and the Superior Court have, without examining the language of the weapons statutes in context, extended the *Brooks* language beyond its single-charge factual setting to uphold inconsistent verdicts based solely on a sufficiency-of-the-evidence review.[37]

---

**33.** *Id.* at 640.

**34.** *See* 729 A.2d at 266.

**35.** *See id.*

**36.** *See Brown,* 729 A.2d at 266 (thirteen other felony convictions); *Tilden v. State,* 513 A.2d

1302 (Del.1986) (lesser-included predicate felony).

**37.** *See Samuel v. State,* 1997 WL 317362, 1997 Del. LEXIS 133 (four underlying felonies merged into two); *Fletcher v. State,* 435 A.2d 1040 (Del.1981) (predicate felony charge dropped in exchange for guilty plea on com-

In this case, the jury acquitted Priest of *all* underlying felony charges. Therefore, the facts of this case squarely present, for the first time, the need for us to scrutinize closely the language of the weapons statutes, and the proper application of *Brooks,* to cases involving more than a single weapons charge. Specifically, we must determine whether the doctrine implicit in the *Brooks* language—that a jury need not convict the defendant of the underlying offense to return a guilty verdict on a weapons offense where no underlying felony is separately charged—should apply in a case where a jury fails to convict the defendant of a specifically charged underlying felony or a lesser-included felony, yet convicts the defendant of PFDCF.

The question of whether an actual conviction of the underlying felony is an element of the statutory PFDCF offense requires a close reading of the applicable statute and a reappraisal of the role of jury lenity in cases of predicate and compound felony inconsistencies. We conclude that the common law analysis normally employed to avoid post-verdict inquiry into what appears to be jury mistake or a jury's exercise of leniency cannot be reconciled with the PFDCF statute. Therefore, the failure to obtain a conviction of either the specific predicate offense or a lesser-included felony left the State unable to prove—as our General Assembly requires—that Priest possessed a firearm "during [his] commission of a felony." We accordingly conclude that Priest's PFDCF convictions, predicated on the charges of

Trafficking and Possession with Intent to Deliver, must be vacated.

### B. The Statute

Although the PFDCF statute recognizes that jury lenity may come into play, it forecloses that doctrine's application where, as here, an inconsistency between the verdicts relating to the predicate and compound offenses results from the trial jury's verdict of not guilty on all predicate offenses charged in the indictment. Subsection (g) of the statute provides:

> A person may be found guilty of violating this section notwithstanding that the *felony* for which the person *is convicted* and during which the person possessed the firearm is a lesser included *felony* of the one originally charged.[38]

Thus, the only inconsistency that the statute expressly contemplates and allows is the inconsistency which arises where the jury finds a defendant guilty of a lesser-included offense of a predicate felony charged in the indictment. The statute's reference to "the felony for which the person is convicted" necessarily must refer to a separately charged *felony,* i.e., the predicate felony, that is the subject of a distinct count in the indictment. That must be so, because a "conviction" on the compound felony (the weapons offense) is by its very nature all or nothing—for the weapons count there can be no lesser-included offense.

---

pound offense). *Cf. State v. Nickerson,* 1997 WL 855706, 1997 Del.Super. LEXIS 586, *aff'd* 734 A.2d 159 (Del.1999) (holding that *Tilden* controlled and precluded reanalysis of § 1447A(g) despite Tilden's conviction of a lesser included felony and Nickerson's conviction on a mere misdemeanor); *State v. Mintz,* 1993 Del.Super. LEXIS 491, *appeal dismissed,* 633 A.2d 370 (Del.1993) (misdemeanor guilty plea on predicate offense).

**38.** 11 *Del. C.* § 1447A(g) (emphasis added). *See also* 11 *Del. C.* § 1447(e) ("A person may be found guilty of [PDWDCF] notwithstanding that the felony for which the person is convicted and during which the person possessed the deadly weapon is a lesser included felony of the one originally charged.").

In the absence of any ambiguity, we must be guided by the plain meaning of the statutory language. Given the principle of statutory construction, *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—the "lesser-included exception" found in subsection (g) must be read to signify the General Assembly's intent that a not guilty verdict on a predicate felony precludes a conviction for PFDCF, except where there is a conviction of a lesser-included felony under the predicate felony.[39] By instructing that a conviction on the compound offense may remain "notwithstanding" a jury's finding of guilt on a lesser-included felony, the General Assembly carved out only one exception. By referring to the "felony for which the person is convicted," that legislative instruction indicates that the statute creates criminal liability only where a defendant is actually found guilty of *some* felony: either the felony charged in the indictment or a lesser-included felony.

Given the General Assembly's codification of the federal constitutional mandate in 11 *Del. C.* § 301(b)—that a conviction is valid only where the State establishes each element of the charged offense beyond a reasonable doubt—this result is not surprising. To allow Priest's PFDCF convictions to stand despite an outright acquittal of each predicate offense would read into the statute an exception that finds no support in the statutory language. Thus, whatever may otherwise be the reach of the

common-law doctrine of jury lenity, its application here would contravene the public policy expressed in the PFDCF statute and Section 301(b). To the suggestion by the dissent that today's ruling overturns twenty-five years of precedent, we demur. All we do today is give effect to the plain language of our weapons statutes and recognize the limited factual reach of *Brooks*. We overrule prior case law only to the extent those precedents uphold convictions after inconsistent verdicts where the jury failed to convict on a predicate felony, either the felony originally charged in the indictment or a lesser-included felony.[40]

## C. Jury Lenity and Inconsistent Verdicts

The principle of jury lenity—settled in our law and vital to a system of justice that recognizes the primacy of citizen-based factfinding—continues to guide our review of many inconsistent-verdict cases. But, in cases where the State has failed, as a matter of law, to meet its burden imposed by the language of the weapons statutes and Section 301(b), appellate review of the sufficiency of the evidence cannot salvage a conviction. In those limited circumstances, jury lenity cannot operate to excuse or explain away the State's failure to establish an essential, statutorily-dictated element of its case.

### 1. General Principles

The majority recognizes that but for language in Sections 1447(e) and 1447A(g),

**39.** *See Walt v. State,* 727 A.2d 836, 840 (Del. 1999) (holding that since the term *step-grandfather* is not enumerated in statutory definition of the term *family,* statute at issue could not apply to step-grandfather).

**40.** *See Brown,* 729 A.2d at 266 (acquittal on predicate charge); *Nickerson,* 1997 Del.Super. LEXIS 586, *aff'd* 734 A.2d 159 (Del.1999) (underlying misdemeanor conviction). By contrast, in the *Fletcher* and *Mintz* cases, 435

A.2d at 1040 and 1993 Del.Super. LEXIS 491, respectively, the defendant voluntarily removed the issue from consideration by entering pleas to misdemeanors to avoid trial on the predicate charge and admitted the facts alleged in the weapons charges. As a result, no inconsistent jury verdict occurred, and as in *Brooks,* there was no need to obtain a conviction on the underlying felony.

one could argue that the jury has made two separate findings of fact, albeit with inconsistent results—that the defendant both did and did not commit a felony that underlies a weapons charge. The common-law approach would explain this inconsistency in terms of jury lenity or mistake, and would require a reviewing court to accept this result so long as there exists record support for the commission of the felony when viewed solely as an element of the weapons charge. In effect, this approach would be to treat the case as if it were *Brooks,* where there was no predicate felony charge, except that the reviewing court would ignore the jury's failure to convict on the predicate felony and would examine the record to determine if there is sufficient evidence that would have permitted the jury to convict on the element of the weapons charge that alleged that the defendant's possession of the weapon occurred during the commission of a specific underlying felony.

Much has been written on similar issues in the federal system, although in a different context. In *United States v. Powell,* a jury acquitted the defendant of two predicate felonies: distribution and conspiracy to distribute controlled substances.[41] Nonetheless, the jury convicted Powell of the compound charge of facilitating those felonies by telephone. On review by the United States Supreme Court, Powell argued that the inconsistent verdicts required the Court to find as a matter of law that the evidence was insufficient to support the compound felony conviction.[42] Rejecting Powell's argument, the Court held:

Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent.[43]

The Court concluded that "if inconsistent verdicts are nevertheless reached[,] those verdicts still are likely to be the result of mistake, or lenity," and thus must remain undisturbed by reviewing courts.[44]

Importantly, the Court in *Powell* disclaimed that it was engaging in sufficiency-of-the-evidence review. The United States Supreme Court held that regardless of the implications of the inconsistent verdicts, the prosecuting authority "must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt."[45] *Powell* represents the federal courts' articulation of the jury lenity doctrine.

Several years later, we adopted *Powell*'s rationale in *Tilden v. State.*[46] Tilden was charged with two counts of first-degree robbery as predicate felonies, crimes that involved the use of a deadly weapon. A jury convicted Tilden of two counts of second-degree robbery, however, as well as two counts of PDWDCF. On appeal, Tilden argued that the convictions were legally inconsistent, claiming that the jury had implicitly rejected the State's evidence supporting the weapons element of first-

41. 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

42. *Id.* at 68, 105 S.Ct. 471.

43. *Id.*

44. *Id.*

45. *Id.* at 67, 105 S.Ct. 471.

46. 513 A.2d 1302 (Del.1986).

degree robbery yet had simultaneously accepted that same evidence to convict him of the PDWDCF charge. Affirming Tilden's convictions, we held that *Powell*'s "rule of jury lenity finds proper application in cases of verdict inconsistency,"[47] and that judicial review of the sufficiency of the evidence, independent of lenity considerations, affords "protection against jury irrationality or error."[48] Noting that the record demonstrated gun-related testimony by the robbery victims and evidence of a shotgun seizure by police, we held that, viewing the evidence in a light most favorable to the prosecution, a "rational fact finder could have found the defendant guilty beyond a reasonable doubt as to the weapons charge."[49] Although *Tilden* focused on the *Powell* "rule of jury lenity," it did not consider the language of our weapons statutes, which state that a jury finding of guilt on a lesser-included felony would suffice to sustain a conviction on the PDWDCF charge.

Unlike *Tilden,* where the jury *did convict* (inconsistently) on a lesser-included felony, a later case—*Johnson v. State*[50]— presented the precise question before us today: whether a conviction of a compound offense can survive in the face of an acquittal of its predicate felony charge. In *Johnson,* a jury acquitted Johnson of burglary but convicted him of conspiracy to commit burglary. On appeal, we vacated the conspiracy conviction. Looking to the language of the indictment, we held that by "failing to prove beyond a reasonable doubt that the defendant committed burglary in the third degree as alleged in the first count of the indictment, the State also failed to prove that he committed the overt act necessary to the conspiracy charge as alleged in the third count of the indictment."[51] We also found that the possibilities that a Johnson coconspirator could have performed the overt act or that Johnson could have been found culpable as an accomplice could not cure the inconsistency, because neither the indictment nor the arguments advanced at trial presented those alternate theories of guilt.[52]

### 2. Reconciling *Johnson* with *Tilden*

Although *Johnson* remains jurisprudentially sound, the inconsistent-verdict principles later established in *Tilden* purported to modify *Johnson's* precedential reach. *Tilden* stands for the proposition that an acquittal of one predicate count does not automatically require a post-trial judgment of acquittal on a factually-related offense, as *Johnson* might be read to suggest. Adopting the *Powell* rationale, we held in *Tilden* that "[w]hile we decline to expressly overrule *Johnson,* ... the controlling standard for testing a claim of inconsistent verdicts is the rule of jury lenity now approved coupled with the sufficiency of evidence standard."[53] Thus, our reconciliation of *Tilden*—which coupled jury lenity and a sufficiency-of-the-evidence standard—with *Johnson*—which we declined in *Tilden* to overrule—is that a multiple-count verdict that includes a weapons charge as the compound offense, even if factually inconsistent, must stand where the verdict reflects jury lenity *and* where

---

47. *Id.* at 1307.

48. *Id., citing Powell,* 469 U.S. at 67, 105 S.Ct. 471.

49. *Tilden,* 513 A.2d at 1307, *citing Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis added).

50. 409 A.2d 1043 (Del.1979).

51. *Id.* at 1044.

52. *Id.*

53. *Tilden,* 513 A.2d at 1307.

the jury has convicted on a lesser-included felony.

In most cases of verdict inconsistency, the facts will be controlled by the *Johnson–Tilden* principle, and inconsistent verdicts resulting from a not guilty verdict on a predicate charge and a guilty verdict on a compound charge will likely not invalidate the conviction. In *Tilden,* the jury convicted the defendant of second-degree robbery (an offense that did not implicate a weapon), rather than first-degree robbery (an offense that did). Second-degree robbery was, of course, a lesser-included felony, although not the felony originally charged as the predicate in Tilden's indictment—the very scenario contemplated by our weapons statute. As the *Tilden* court pointed out, the evidence that Tilden possessed a deadly weapon while committing the acts constituting second-degree robbery (as the jury found) independently supported his conviction on the compound offense.

The indictment in *Powell* contained language similar to the language contained in the indictment here.[54] The *Powell* Court, nonetheless, upheld the inconsistent verdicts, holding that where there is a finding of guilt on an offense that incorporates by reference a predicate charge on which there was an acquittal, the rule of jury lenity controls in the federal courts. But the indictment in *Tilden* did not involve a predicate-compound inconsistency of the kind presented in *Powell.* Accordingly, *Tilden,* in which we refused to overrule *Johnson,* does not reach or control the circumstances presented here. Nor does *Powell,* but for a different reason: *Powell's* jury lenity rationale, which *Tilden*

adopted, is proscribed by the statutory language that defines Delaware's weapons offenses.

If on Priest's predicate drug possession charge the jury had returned a guilty verdict on a lesser-included felony, the statute would control and, as in *Tilden,* the verdict would reflect that the jury opted for a more lenient finding by intentionally disregarding the evidence of the more serious charge. In that scenario, the General Assembly has specifically chosen to modify the principle of lenity—a doctrine that discourages post-verdict judicial inquiry into jury decisionmaking—by providing that a conviction on a lesser-included felony of that on which the defendant was indicted will suffice to support a conviction on the weapons charge.

In this case, however, there is no underlying felony conviction at all. Because the jury refused to find Priest guilty of *any* predicate felony, whether as charged or in the form of a lesser-included offense, the statute precludes any application of the *Powell* jury lenity rationale which we purported to adopt in *Tilden.*

### 3. Priest's Claims of Inconsistency

Because this case involves inconsistent jury verdicts relating to predicate felonies and compound weapons offenses, by reason of an acquittal on the predicate charges, the analysis employed in *Johnson* is more properly applicable here. In *Johnson,* the indictment alleged that the overt act of the charged conspiracy "consisted of the crime of burglary in the third degree as charged in the first count of the indictment."[55] Absent a conviction on that

---

**54.** *Compare id.* at 60, 105 S.Ct. 471 (stating that the jury convicted Powell of "using a telephone *in committing*" the felonies of conspiracy to possess cocaine with intent to distribute and, in a separate count, possession with intent to distribute cocaine) *with* 11 *Del.*

C. § 1447A(a) ("A person who is in possession of a firearm *during the commission of a felony* is guilty of possession of a firearm during the commission of a felony.") (emphasis added).

**55.** *Johnson,* 409 A.2d at 1044.

predicate offense—or some alternative basis of culpability supported by the record, such as accomplice liability—we found the evidence insufficient to support a conspiracy conviction.

The facts here mirror those in *Johnson.* The PFDCF counts were expressly tied to the underlying felonies.[56] The jury did not convict Priest either as a principal *or as an accomplice* to Fletcher's drug activity. Therefore, the PFDCF convictions cannot stand in the face of an acquittal of the predicate crimes explicitly charged as an element of the compound offenses, and absent a conviction on a lesser-included felony. In statutory terms, the jury's outright acquittal on the predicate felonies establishes that Priest is not a "person ... convicted" of a felony or "lesser included felony of the one originally charged," as contemplated by 11 *Del. C.* § 1447A(g). For that reason, and because no other legally cognizable basis to support such a

verdict exists, Priest's weapons convictions are unsustainable as a matter of law.[57]

## D. *The Federal Statute*

We pause here to observe that, because it employs hortatory language at odds with Delaware's mandatory provisions, the counterpart federal weapons-possession statute affords no guidance in our application of the PFDCF statute. Under federal law, "... any person who, *during and in relation to* any crime of violence or drug trafficking crime ... for which the person *may be prosecuted* in a court of the United States, uses or carries a firearm ..." is subject to a range of sentences separate from those connected to the underlying felony.[58] The Circuit Courts of Appeal that have addressed the issue of compound-predicate inconsistencies have all held that under the federal statute, a jury need not find a defendant guilty of the predicate offense to convict on the compound charge.[59] To the contrary, the

---

**56.** *See State v. Priest,* Del.Super., ID No. 00414252 (Oct. 6, 2003), Indictment at Count 3 ("Torisho K. Priest ... did knowingly possess a firearm during the commission of a felony by possessing a firearm *during the commission of Trafficking Cocaine* as set forth in Count 3 [*sic*] of this Indictment. . . ."), Count 5 ("Torshiro K. Priest ... did knowingly possess a firearm ... *during the commission of Possession with Intent to Deliver Cocaine* as set forth in Count 4 of this Indictment. . . .") (emphasis added).

**57.** Any other reading runs counter to our well-established precedent that demands both particularity in the indictment and, to sustain a conviction, proof of each element of the offense charged therein. *See, e.g., Gray v. State,* 441 A.2d 209, 223 (Del.1981) ("Indictments and informations ... are sufficient in law if drawn with such particularity that the accused will be fully informed of the charge he will be required to meet, and, upon the basis of such information, will be given a reasonable opportunity to prepare his defense, and to permit the pleading in future prosecutions of the proceeding as a bar to further prosecution upon the same facts.");

*State v. Steele,* 2002 WL 264538, 2002 Del.Super. LEXIS 20 ("All essential elements of a crime must be incorporated into the indictment count."); *State v. Samuels,* 67 A. 164, 165 (Del. Oyer & Term.1904) ("The burden of proving every material element of the crime charged in the indictment rests upon the State."). *Cf. State v. Naylor,* 90 A. 880, 890 (Del. Oyer & Term.1913) (focusing on "material ingredient[s]" of indictment).

**58.** 18 U.S.C. § 924(c)(1)(A) (2005) (emphasis added). *See also Simpson v. United States,* 435 U.S. 6, 10, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) (confirming that, despite its language, Section 924 constitutes a separate offense, rather than a sentencing enhancement).

**59.** *See, e.g., United States v. Frye,* 402 F.3d 1123, 1128 (11th Cir.2005); *United States v. Carter,* 300 F.3d 415, 425 (4th Cir.2002); *United States v. Lake,* 150 F.3d 269, 274–75 (3d Cir.1998); *United States v. Nelson,* 27 F.3d 199, 200 (6th Cir.1994); *Myers v. United States,* 993 F.2d 171, 172 (8th Cir.1993); *United States v. Hill,* 971 F.2d 1461, 1467 (10th Cir.1992); *United States v. Munoz–Fabe-*

phrase *may be prosecuted* indicates that for a weapons conviction to survive appellate scrutiny, the government need only show that a reasonable jury *could have* found the defendant guilty of the predicate offense, not that it actually did.[60] "It is only the fact of the offense, and not a conviction, that is needed to establish the required predicate."[61]

By contrast, Delaware's PFDCF statute affirmatively requires that the defendant possess a firearm "during the commission of a felony." That language focuses on the defendant's conduct, rather than the defendant's status. Under the Delaware statute, the defendant must actually be found to have perpetrated a specified felony, whereas under the federal counterpart, the trier of fact is directed to look only to whether the defendant "may be prosecuted" for the actions that give rise to the compound offense. By using the precatory term *may*, the federal statute signals unequivocally that an actual conviction is unnecessary to sustain a finding of guilt on the compound offense. Because of the vastly different policy approaches underlying these two statutes, the federal analysis is inapplicable and therefore unpersuasive.

### E. Disposition

The General Assembly's word choice controls our analysis. In the PFDCF statute, the General Assembly opted to create an offense that punishes one who uses a firearm while committing a felony. As a result, the PFDCF statute and its counterpart modify the common law by proscribing jury lenity and sufficiency-of-the-evi-

dence review. To allow Priest's weapons-possession convictions to stand in the face of an outright acquittal on the predicate felony would undermine the plain language of the PFDCF statute. Given the statutory limitation on judicial review, the acquittal removed from the jury's further consideration the very conduct that the General Assembly sought to criminalize. Where a jury finds that a defendant did not commit an underlying felony or a lesser-included felony, and they reject an independent basis for culpability (such as accomplice liability), as they did here, the policy justification for applying the PFDCF statute vanishes. We must, therefore, vacate Priest's PFDCF convictions.

To forestall the possibility of this type of predicate-compound inconsistency arising in the future, we suggest that, when instructing a jury, trial judges develop and use a pattern instruction that precludes the jury from deliberating on a PFDCF or PDWDCF count in the event that they find the defendant not guilty of the underlying predicate felony or of a lesser-included felony. If the jury acquits on the predicate count, the trial judge should enter a judgment of acquittal on the related weapons charge.

We acknowledge that removing the possibility of predicate-compound inconsistencies by juries may lead to convictions on both charges, rather than on a single weapons offense. Defendants would thus be subject to potentially harsher consequences. The terms of the weapons statutes, however, dictate this result by man-

---

*la,* 896 F.2d 908, 910–11 (5th Cir.1990); *United States v. Hunter,* 887 F.2d 1001, 1003 (9th Cir.1989).

**60.** *See Carter,* 300 F.3d at 425 (holding that there only need be "some showing by the government that a reasonable jury could have convicted on the predicate drug offense"). *See also Hill,* 971 F.2d at 1463–64 ("This

interpretation finds support in the statutory language which provides that the underlying offense need only be on for which the defendant 'may be prosecuted in a court of the United States. . . .' ").

**61.** *Munoz–Fabela,* 896 F.2d at 911.

dating that there be an underlying felony conviction. Ultimately, judicial deference to the factfinder, embodied in the doctrine of jury lenity, cannot supercede the judiciary's primary obligation to give effect to the General Assembly's formulation of the criminal law.

## IV.

For these reasons, Priest's convictions for Maintaining a Vehicle for Keeping Controlled Substances and Possession of a Firearm During the Commission of a Felony are **VACATED**. We **REVERSE** the judgment of the Superior Court, and **REMAND** with instructions to enter a judgment of acquittal on the Maintaining a Vehicle and all PFDCF counts.

BERGER, J., Concurring in part and Dissenting in part.

I agree with the majority's conclusion that here, as in *McNulty v. State*,[62] there is insufficient evidence to support Priest's conviction on the charge of maintaining a vehicle. I would affirm, however, on the two PFDCF convictions.

Under settled law, the fact that the jury acquitted Priest on the predicate offenses is not dispositive. Inconsistent verdicts must be reviewed to determine whether there was sufficient evidence to support a conviction on the predicate offense. If there was, then the weapons conviction stands and the inconsistency is attributed to jury lenity. The majority has overturned more than 25 years of precedent, relying on a newly discovered legislative intent to preclude convictions in cases like this one. Since there have been no recent amendments to the relevant criminal statutes, I find no basis on which to write new

law governing inconsistent verdicts. Therefore, I dissent.

In 1976, this Court held that a person may be convicted of a weapons charge without being convicted of the underlying felony. In *Brooks v. State*,[63] defendant advanced the very argument now adopted by the majority—that § 1447(e)[64] implicitly requires a conviction on the underlying felony. The *Brooks* Court rejected that argument, noting that, "[t]he statute does not require a conviction by its terms, but only requires that the weapons offense occur during the commission of a felony."[65] Since then, this Court and the Superior Court have repeatedly upheld weapons convictions in cases where there was no underlying felony conviction. *See, e.g.: Brown v. State,* 729 A.2d 259 (Del.1999)(Upholding weapons convictions where defendant acquitted of underlying felonies.); *Samuel v. State,* 694 A.2d 48 (Del.1997)(Upholding four weapons convictions where the four underlying felonies were merged into two.); *Fletcher v. State,* 435 A.2d 1040 (Del.1981) (Upholding weapons conviction, after a guilty plea, where underlying robbery charge was *nolle prossed.*); *State v. Nickerson,* 1997 WL 855706 (Del.Super.), *aff'd., Nickerson v. State,* 734 A.2d 159 (Del.1999) (Upholding weapons conviction where defendant acquitted of underlying felony, but convicted on lesser included misdemeanor.); *State v. Mintz,* 1994 WL 465539 (Del.Super.)(Upholding weapons conviction, after a guilty plea, where defendant also pled guilty to misdemeanor.)

Because the jury acquitted Priest on the underlying felonies, this Court is obliged to review the record and determine whether, despite the verdict, there is sufficient evidence to support convictions on those drug

---

**62.** 655 A.2d at 1219.

**63.** 367 A.2d 638 (Del.1976).

**64.** At that time it was designated § 1447(d).

**65.** *Id.* at 640.

crimes. Viewed in the light most favorable to the State, the evidence that Priest was a participant in the planned drug deal may be inferred from the fact that: (i) Priest got into the car with Fletcher, and, according to Powell, Fletcher said, "this is his cousin, and he is got to come with me kind of thing....."; (ii) while Priest was sitting in the back seat, Fletcher told Powell that he had to go to Bob Evans to get "hooked up" (meaning get a supply of cocaine); and (iii) Priest was carrying a loaded, stolen gun. The jury was satisfied, from the evidence, that Priest and Fletcher were conspiring to commit the crime of possession with intent to deliver cocaine. The jury also could have concluded that Priest was Fletcher's accomplice in possessing the crack cocaine found in the glove compartment, and in possessing the same cocaine with intent to deliver. As this Court noted in upholding Fletcher's convictions:

> The State showed that Fletcher and Priest were engaged in a joint criminal enterprise and conspired to sell the cocaine, that Priest rode in the vehicle after Fletcher obtained Powell's consent, that Priest remained with the vehicle while Fletcher went into the restaurant, and that Priest was in possession of the firearm while he and Fletcher were in the car. That evidence was sufficient for the jury to conclude that Fletcher and Priest had agreed that Priest would carry the gun during the criminal enterprise.[66]

In sum, since there is enough evidence to support convictions on the underlying drug charges, the jury's decision to acquit Priest can be attributable to lenity, and the weapons convictions should be affirmed.

66. *Fletcher v. State,* 2005 WL 646841, *4 (Del. Supr.).