# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | I.D. No. 2112000595 |
| | ) | |
| RAMON SANTIAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: January 13, 2023
Decided: March 7, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Question, Raised Sua Sponte, of Whether New Trial Should Be Ordered*:
**A NEW TRIAL WILL NOT BE ORDERED AND THE JURY'S VERDICT ON COUNT 1 WILL STAND**

Stephen R. Welch, Jr., Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State.*

Suzanne Macpherson-Johnson, Esquire, Office of Defense Services, Dover, Delaware, *Attorney for Defendant.*

**Primos, J**.

Before this Court is the question of whether a new trial should be ordered in this case. Following a trial, the jury found Defendant Ramon Santiago (hereinafter "Mr. Santiago") guilty of Count 1 of the indictment (Operation of a Motor Vehicle Causing Death) but was unable to reach a verdict as to Count 2 (Inattentive Driving)—a disposition that is legally inconsistent. However, because the doctrine of jury lenity controls, and the evidence is otherwise sufficient to support the conviction, **the verdict on Count 1 will stand, and a new trial will not be ordered.**

## FACTUAL AND PROCEDURAL BACKGROUND

In November of 2022, Mr. Santiago was tried on a two-count indictment based on a fatal vehicular accident that had occurred in August of 2021. The evidence at trial showed that Mr. Santiago, while driving a motor vehicle, turned left across the opposite lane of travel on a two-way street, and that his vehicle was struck by a motorcycle travelling in the opposite direction. The driver of the motorcycle was taken to the hospital and later died from his injuries. Ultimately, Mr. Santiago was charged with violating 21 *Del. C.* § 4176A, operation of a vehicle causing death, and 21 *Del. C.* § 4176, careless or inattentive driving.

21 *Del. C.* § 4176A provides in relevant part that "[a] person is guilty of operation of a vehicle causing death when, in the course of driving or operating a motor vehicle or OHV in violation of any provision of this chapter . . . , the person's driving or operation of the vehicle or OHV causes the death of another person."[1] Mr. Santiago was charged under this statute on the theory that he was in violation of 21 *Del. C.* § 4176's prohibition against inattentive driving when the accident occurred. Prior to its deliberations, the jury was instructed that, in order to find Mr. Santiago guilty of Count 1, it had to find beyond a reasonable doubt, *inter alia*, that

---

[1] 21 *Del. C.* § 4176A(a). An "OHV" is an "off-highway vehicle." 21 *Del. C.* § 101(46).

"[t]he Defendant drove or operated a motor vehicle while in violation of 21 *Del. C.* § 4176 (inattentive driving)."[2]

On November 4, 2022, at the end of a four-day jury trial, the jury returned a verdict of guilty as to Count 1, finding Mr. Santiago guilty of operation of a vehicle causing death, but could not reach a verdict as to Count 2, resulting in a hung jury on the inattentive driving charge.[3] Mr. Santiago moved to set aside the verdict, arguing that it was inconsistent as a matter of law, but the State opposed, invoking the doctrine of jury lenity. The Court declined to grant the motion but indicated that the issue could be raised in a post-trial motion, thus effectively denying Mr. Santiago's motion without prejudice.

After no post-trial motions were timely filed, the Court sent a letter to both parties dated November 22, 2022, noting the expiration of time for any post-trial motions and directing the State to file a response "indicating the State's position regarding whether or not" there was a "potential irreconcilable conflict" between the verdict as to Count 1 and the non-verdict as to Count 2.[4] On December 1, 2022, Mr. Santiago filed a Motion for Leave to file a Motion for Judgment of Acquittal Out of Time.[5] The Court denied that motion for jurisdictional reasons stated in a letter order dated December 6, 2022, but nonetheless directed briefing on whether a new trial was necessary in light of the inconsistent verdict and non-verdict.[6] The State filed its response on December 27, 2022, and Mr. Santiago filed his reply on January 13, 2023. For the reasons that follow, the Court finds that a new trial is not warranted and that the jury's verdict as to Count 1 will stand.

---

[2] Charge to the Jury (D.I. 25) at 7.
[3] D.I. 26.
[4] D.I. 27.
[5] D.I. 28.
[6] *State v. Santiago*, 2022 WL 17480641, at *1–2 (Del. Super. Dec. 6, 2022).

## DISCUSSION

The question in this case is whether a jury's guilty verdict for operation of a vehicle causing death can stand despite that same jury's failure to convict on the sole charged predicate traffic offense. There is no question in this case that the verdict and non-verdict are legally inconsistent, i.e., that they are inconsistent as a matter of law. An essential element of the operation of a vehicle causing death statute is a violation of a predicate traffic offense, and inattentive driving is the only other traffic offense on which the jury was instructed.[7] Thus, the question is whether the doctrine of jury lenity, which allows inconsistent jury verdicts to stand, controls, or if this case falls instead into an exception to the jury lenity rule. For the reasons that follow, the Court concludes that jury lenity does apply and that Mr. Santiago's conviction is supported by sufficient evidence.

## I.     Jury Lenity

### a.  The *Tilden* Rule (and the *Priest* Exception)

Mr. Santiago argues that "a conviction of the compound offense of Operation of a Motor Vehicle Causing Death cannot legally survive where the jury failed to convict on the predicate charge of inattentive driving."[8] However, the proposition on which this argument depends—that a conviction for a compound offense is automatically negated by a jury's failure to convict on a predicate offense—is not necessarily true under Delaware law. To the contrary, "[i]n most cases of verdict inconsistency, . . . inconsistent verdicts resulting from a not guilty verdict on a

---

[7] *See Davis v. State*, 706 A.2d 523, 525 (Del. 1998) (per curiam) (explaining that a court determines if verdicts are inconsistent as a matter of law by "examining the elements of each crime to determine if they are identical" and that "[i]f these elements are identical, the different verdicts may be legally inconsistent"); *see also McNeal v. State*, 44 A.3d 982, 984 (Md. 2012) ("A legally inconsistent verdict is one where the jury acts contrary to the instructions of the trial judge with regard to the proper application of the law.").

[8] Reply to State's Resp. to Mot. for New Trial ¶ 4.

predicate charge and a guilty verdict on a compound charge will likely not invalidate the conviction."[9] This is because Delaware has adopted the common law doctrine of jury lenity, which allows "a conviction that is inconsistent with another jury verdict" to stand so long as there "is legally sufficient evidence to justify the conviction."[10]

The rationale for this seemingly counterintuitive doctrine was explained by the United States Supreme Court in *United States v. Powell* as follows:

> [I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.[11]

The Delaware Supreme Court adopted the rule of jury lenity, and *Powell*'s rationale for it, in 1986 in *Tilden v. State*.[12] The *Tilden* Court further held "that the controlling standard for testing a claim of inconsistent verdicts is the rule of jury lenity now approved coupled with the sufficiency of evidence standard."[13] In other words, an inconsistent verdict typically can stand if the conviction is supported by

---

[9] *Priest v. State*, 879 A.2d 575, 587 (Del. 2005) (en banc); *see also Davis*, 706 A.2d at 526 ("Even if a defendant is convicted of a compound offense predicated upon a lesser offense, of which the defendant is acquitted, the verdict will stand so long as there was sufficient evidence in the record to support a conviction of the lesser offense."); *but see State v. Terreros*, 2021 WL 5577253, at *2 (Del. Super. Nov. 29, 2021) ("An acquittal on a predicate offense negates a conviction on its compound offense.").

[10] *King v. State*, 126 A.3d 631, 2015 WL 5168249, at *2 (Del. 2015) (TABLE).

[11] 469 U.S. 57, 65 (1984); *see also Davis*, 706 A.2d at 526 ("This theory is based upon the assumption that the jury, convinced of defendant's guilt, properly reached a verdict on the compound offense, and then, through mistake, compromise or lenity, acquitted on the lesser offense.").

[12] *Tilden v. State*, 513 A.2d 1302, 1306–07 (Del. 1986) (en banc) ("We believe the rule of jury lenity finds proper application in cases of verdict inconsistency in this State.").

[13] *Id.* at 1307.

sufficient evidence.[14] However, in *Priest v. State*, the Delaware Supreme Court recognized a limited exception for cases in which the jury lenity rationale is "proscribed by the statutory language" defining the criminal offense.[15] In these rarer cases, "judicial deference to the factfinder, embodied in the doctrine of jury lenity, cannot supercede [sic] the judiciary's primary obligation to give effect to the General Assembly's formulation of the criminal law."[16] Thus, the rule for inconsistent verdicts in Delaware can be synthesized as follows: inconsistent verdicts will be upheld so long as they are supported by sufficient evidence *unless* the text of the criminal statute at issue forecloses application of the jury lenity doctrine.

Determining when this exception applies requires a close examination of the reasoning in *Priest*. In that case, the defendant was convicted of multiple counts of possession of a firearm during the commission of a felony (PFDCF) but acquitted on all of the charged predicate felonies.[17] As the name implies, an element of the PFDCF offense is the commission of a felony.[18] At some points, the *Priest* decision employs broad language about the predicate-compound nature of the PFDCF statute.[19] However, those statements must be read in light of the *Priest* Court's close

---

[14] *Turner v. State*, 45 A.3d 149, 2012 WL 1795831, at *2 (Del. 2012) ("Under the rule of jury lenity, this Court may uphold a conviction that is inconsistent with another jury verdict if there is legally sufficient evidence to justify the conviction." (internal quotation marks omitted)).

[15] *Priest*, 879 A.2d at 587; *see also State v. Wilkerson*, 2021 WL 4075018, at *4 (Del. Super. Sept. 7, 2021) ("Only in those rarer cases where the language of the statute at issue requires a different result is the *Priest* test employed."); *Terreros*, 2021 WL 5577253, at *4 ("[L]egislative intent guides in determining whether an inconsistent conviction may stand.").

[16] *Priest*, 879 A.2d at 590. *Priest* relied in part on *Johnson v. State*, 409 A.2d 1043 (Del. 1979), a Delaware Supreme Court decision which predates *Tilden* and is discussed in more detail later in this opinion. *See Terreros*, 2021 WL 5577253, at *2 n.11 (explaining that *Priest* is more illuminating than *Johnson* because the latter predates *Tilden* and does not engage with the doctrine of jury lenity).

[17] *Priest*, 879 A.2d at 577.

[18] 11 *Del. C.* § 1447A(a) ("A person who is in possession of a firearm during the commission of a felony is guilty of possession of a firearm during the commission of a felony.").

[19] *See e.g. Priest*, 879 A.2d at 588 ("The PFDCF counts were expressly tied to the underlying felonies. . . . Therefore, the PFDCF convictions cannot stand in the face of an acquittal of the

analysis of that statute, 11 *Del. C.* § 1447A. That analysis centered not on subsection (a) of the statute, which makes commission of a felony an element of the offense, but on subsection (g), which provides that "[a] person may be found guilty of violating this section notwithstanding that the felony for which the person is convicted and during which the person possessed the firearm is a lesser included felony of the one originally charged."[20]

The Court in *Priest* reasoned that "the only inconsistency that the statute expressly contemplates and allows is the inconsistency which arises where the jury finds a defendant guilty of a lesser-included offense of a predicate felony charged in the indictment."[21] Relying on the *expressio unius est exclusio alterius* canon of statutory construction—which provides that "the expression of one thing is the exclusion of another"—the Supreme Court concluded that subsection (g) must "be read to signify the General Assembly's intent that a not guilty verdict on a predicate felony precludes a conviction for PFDCF, except where there is a conviction of a lesser-included felony under the predicate felony."[22] In other words, by explicitly allowing an inconsistent verdict to stand under one specific circumstance—a conviction on a lesser-included felony of the predicate felony[23]—the General

___

predicate crimes explicitly charged as an element of the compound offenses, and absent a conviction on a lesser-included felony."); *id.* at 589 ("The General Assembly's word choice controls our analysis. In the PFDCF statute, the General Assembly opted to create an offense that punishes one who uses a firearm while committing a felony. As a result, the PFDCF statute and its counterpart modify the common law by proscribing jury lenity and sufficiency-of-the-evidence review.").

[20] *Id.* at 583 (quoting 11 *Del. C.* § 1447A(g)).

[21] *Id.*

[22] *Id.* at 584.

[23] While a lesser-included felony is still a felony, a conviction on a lesser-included felony may nevertheless result in an inconsistent verdict for PFDCF purposes where, as in *Tilden*, possession of a firearm is an element of the charged felony but not the lesser-included felony. *See id.* at 587 ("In *Tilden,* the jury convicted the defendant of second-degree robbery (an offense that did not implicate a weapon), rather than first-degree robbery (an offense that did). Second-degree robbery was, of course, a lesser-included felony, although not the felony originally charged as the predicate in Tilden's indictment[—]the very scenario contemplated by our weapons statute.").

Assembly meant to foreclose the possibility of inconsistent verdicts in any other circumstance in the context of the PFDCF statute—such as a failure to convict of either the predicate felony *or* any lesser-included felony. Importantly, this "lesser-included exception" was a product of the PFDCF statute itself, specifically subsection (g).[24] The Delaware Supreme Court emphasized this point in *Graham v. State*, explaining in a footnote that "[t]he inapplicability of the jury-lenity doctrine . . . in the PFDCF context is a product of the PFDCF statute itself *which forecloses the doctrine's application except under limited circumstances.*"[25] This footnote in *Graham* signals that *Priest*'s analysis of subsection (g) should be read as essential to the outcome in that case.

That the *Priest* exception does not apply to all situations of predicate-compound inconsistency is best illustrated by the Delaware Supreme Court's decision in *Morris v. State*.[26] In *Morris*, the defendant was charged with home invasion, a necessary element of which was that "a person enters or remains unlawfully in a dwelling . . . and while in the dwelling *commits or attempts to commit one of six designated felonies.*"[27] Of the six designated felonies, the defendant was charged only with rape and attempted rape, and those were the only underlying offenses on which the jury was instructed.[28] The jury failed to reach a

---

[24] *Id.* at 584 ("All we do today is give effect to the plain language of our weapons statutes . . .").

[25] 171 A.3d 573, 2017 WL 4128495, at *1 n.6 (Del. 2017) (TABLE) (emphasis supplied); *see also State v. Lopez*, 2015 WL 5478174, at *5 (R.I. Super. Sept. 15, 2015) ("The defendant's focus on *Priest* and the Delaware statute is much too tapered, as it fails to take into account that statute's concluding directive in subsection (g), which supplied the Delaware court with its principal basis for vacating the PFDCF conviction.").

[26] 210 A.3d 724, 2019 WL 2123563, at *4 (Del. 2019) (TABLE).

[27] *Id.* (emphasis supplied); *see* 11 *Del. C.* § 826A (repealed September 15, 2019) ("A person is guilty of home invasion when the person knowingly enters or remains unlawfully in a dwelling with intent to commit a violent felony therein, and . . . when in the dwelling . . . engages in the commission of, or attempts to commit, any of the following felonies," including "[r]ape in any degree").

[28] *Morris*, 2019 WL 2123563, at *4.

verdict on the rape charges, but inconsistently convicted the defendant on the home invasion charge.[29] The Delaware Supreme Court nevertheless upheld the conviction, invoking jury lenity and holding that because the evidence was "sufficient to sustain the conviction of home invasion, any inconsistency between the guilty verdict on the charge of home invasion and the jury's failure to agree on the charge of rape in the first degree is of no avail to Morris."[30] Notably, the Supreme Court did not discuss *Priest* or otherwise indicate that the predicate-compound nature of the statutory offense called for a different analysis. Finally, a comparison between *Morris* and *Priest* suggests a critical distinction between criminal statutes in which a *conviction* of a predicate offense is an element of a crime and statutes in which *commission* of a predicate offense is sufficient.[31] In sum, the *Priest* exception applies only when there is specific statutory evidence (e.g., a requirement of an underlying *conviction*), above and beyond the enumeration of a predicate offense, of legislative intent to abrogate the jury lenity doctrine.[32]

---

[29] *Id.*

[30] *Id.* (citing *Tilden*, 513 A.2d at 1307).

[31] *Compare Morris*, 2019 WL 2123563, at *4 ("It should first be noted that a conviction for rape or attempted rape is not an element of the offense of home invasion. The element of home invasion in issue is the fact of the commission or attempted commission of rape.") *with Priest*, 879 A.2d at 589–80 ("The terms of the weapons statutes, however, dictate this result by mandating that there be an underlying felony conviction.").

[32] Other decisions of this Court have framed the jury lenity inquiry as beginning with a choice between the "*Powell-Tilden*" line of cases and the "*Johnson-Priest*" line of cases. *See Terreros,* 2021 WL 5577253, at *2; *Wilkerson*, 2021 WL 4075018, at *1–3. The *Johnson-Priest* line of cases applies only when there is a predicate-compound structure to the offense. *See Terreros,* 2021 WL 5577253, at *3 n.20 ("To determine whether the *Johnson-Priest* framework governs, courts take a categorical approach and ask whether, in the abstract, the statute of conviction depends for its validity on a predicate conviction."). In *Terreros*, the Court concluded that the *Johnson-Priest* framework did not apply, both because the statutes at issue were not "defined as predicate compound offenses" and because, unlike in *Priest*, "the public policy expressed in these statutes is to *expand* the categories of liability, not to restrict them." 2021 WL 4075018, at *3–4. In *Wilkerson*, the Court concluded that *Priest*, rather than *Tilden*, applied and required the Court to "parse the precise language" of the statute in order to determine if jury lenity applies. *Wilkerson*, 2021 WL 4075018, at *4. These cases are consistent with the rule articulated *supra* insofar as the inquiry turns on whether the criminal statute articulates a clear legislative intent to abrogate the

### b. *Johnson v. State*

One seeming outlier in the Delaware Supreme Court's inconsistent verdict jurisprudence is *Johnson v. State*.[33]   In that case, the Supreme Court held that a conspiracy conviction cannot stand when 1) the defendant was charged with and acquitted of the alleged overt act to support the conspiracy conviction and 2) no co-conspirators were alleged to have committed an overt act.[34]  The *Johnson* decision, which predated *Powell* and *Tilden*, made no reference to jury lenity and did not parse the language of the conspiracy statute, 11 *Del. C.* § 512, for evidence of legislative intent to abrogate the common law rule.  In *Tilden*, the Supreme Court declined to "expressly overrule *Johnson*" but noted that "there is no indication that the principle of jury lenity was considered" in that case.[35]

In *Priest*, the Supreme Court explained that "*Tilden* stands for the proposition that an acquittal of one predicate count does not automatically require a post-trial judgment of acquittal on a factually-related offense, as *Johnson* might be read to suggest."[36]  However, it then "reconcile[ed]" *Johnson* and *Tilden* by holding that "a multiple-count verdict that includes a weapons charge as the compound offense, even if factually inconsistent, must stand where the verdict reflects jury lenity *and* where the jury has convicted on a lesser-included felony."[37]  Thus, the

---

rule of jury lenity, but not insofar as they might be read to assert that a predicate-compound structure is *ipso facto* conclusive evidence that the General Assembly has abrogated the jury lenity doctrine.

[33] 409 A.2d 1043 (Del. 1979) (per curiam).

[34] *See id.* at 1044 ("By failing to prove beyond a reasonable doubt that the defendant committed burglary in the third degree as alleged in the first count of the indictment, the State also failed to prove that he committed the overt act necessary to the conspiracy charge as alleged in the third count of the indictment.").

[35] *Tilden*, 513 A.2d at 1307.

[36] *Priest*, 879 A.2d at 586.

[37] *Id.* at 586–87; *see also Younger v. State*, 979 A.2d 1112, 2009 WL 2612520, at *3 (Del. 2009) (TABLE) ("In *Priest v. State,* we reconciled our holdings in *Johnson* and *Tilden,* explaining that, although *Johnson* remains jurisprudentially sound, **the inconsistent verdict principles later**

result in *Priest* turned on the fact that the defendant was not convicted either of the predicate felony or of a lesser-included felony—that was in fact essential to distinguishing that case from *Tilden*. However, as explained above, subsequent cases, such as *Graham* and *Morris*, strongly suggest that *Priest*'s "lesser-included" analysis was specific to the PFDCF statute, not a general modification to Delaware's law of inconsistent verdicts (i.e., *Priest* does not make conviction of a lesser-included charge a prerequisite to the application of the *Tilden* rule outside of the PFDCF context).[38]

Accordingly, while there is no doubt that the holding in *Johnson* still applies to inconsistent verdicts in the conspiracy conviction context,[39] in the absence of further clarity from the Delaware Supreme Court regarding the precedential reach of *Johnson*'s reasoning,[40] this Court understands *Johnson*'s rejection of predicate-compound inconsistencies to apply only in situations in which the court has already made a determination that the statutory language defining the criminal offense forecloses jury lenity. In other words, *Johnson* is instructive *if* the jury lenity doctrine is found inapplicable, but because *Johnson* did not discuss jury lenity, it

---

**established in *Tilden* purported to modify *Johnson's* precedential reach.**" (emphasis supplied) (internal footnote omitted)).

[38] *Graham*, 2017 WL 4128495, at *1 n.6 (explaining that the result in *Priest* is "a product of the PFDCF statute itself which forecloses the doctrine's application except under limited circumstances"); *Morris*, 2019 WL 2123563, at *4 (upholding a predicate-compound inconsistency without requiring a conviction on a lesser-included offense).

[39] *See e.g.*, *Younger*, 2009 WL 2612520, at *2 ("When the only overt act alleged in the indictment is the underlying substantive crime, a defendant's acquittal on this charge negates the overt act element of a conspiracy charge, unless a co-conspirator committed the overt act."); *Holland v. State*, 744 A.2d 980, 982–83 (Del. 2000) (applying the *Johnson* rule to vacate a conviction after an inconsistent verdict and non-verdict on a conspiracy charge).

[40] *Cf. In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, 2016 WL 301245, at *30 (Del. Ch. Jan. 25, 2016) (noting that only the Delaware Supreme Court may choose between its own precedents but concluding that "[a]bsent further guidance from the high court . . . this decision hews to the weight of precedent . . . .").

should not be relied upon by analogy in determining *whether* the General Assembly has abrogated the jury lenity doctrine with respect to a particular criminal statute.

### c. Statutory Analysis

Against this jurisprudential backdrop, the Court turns to the statute at issue in this case.[41] Other than the predicate-compound nature of the offense, Mr. Santiago has not identified anything about the text or structure of 21 *Del. C.* § 4176A indicative of a legislative intent to abrogate the common law doctrine of jury lenity. As in *Morris*, nothing in this statute indicates that the State is required to obtain a conviction on or even charge the underlying offense—rather, the statute requires a predicate "violation" of another provision of Title 21, not a conviction (or charge) of such an offense. Moreover, unlike in *Priest*, the statute says nothing at all regarding the disposition of any charged predicate offense or how that should (or should not) affect a conviction on the compound offense. Thus, the *expressio unius est exclusio alterius* argument relied on in *Priest* is inapplicable here.

The only reference to any charged predicate offense appears in subsection (d), which provides that "an offense which is within the original and/or exclusive

---

[41] 21 *Del. C.* § 4176A provides in full:

(a) A person is guilty of Operation of a Vehicle Causing Death when, in the course of driving or operating a motor vehicle or OHV in violation of any provision of this chapter other than § 4177 of this title, the person's driving or operation of the vehicle or OHV causes the death of another person.
(b) Operation of a vehicle causing death is an unclassified misdemeanor.
(c) Notwithstanding any provision of law to the contrary, a person convicted of Operation of a Vehicle Causing Death shall for the first offense be fined not more than $1,150 and imprisoned not more than 30 months. For each subsequent conviction under this section the person shall be fined not more than $2,300 and imprisoned not more than 60 months.
(d) The Superior Court has original and exclusive jurisdiction over a violation of this section by a person 18 years of age or older. Notwithstanding any provision of law to the contrary, an offense which is within the original and/or exclusive jurisdiction of another court and which may be joined properly with a violation of this section is deemed to be within the original and exclusive jurisdiction of the Superior Court.

jurisdiction of another court and which may be joined properly with a violation of this section is deemed to be within the original and exclusive jurisdiction of the Superior Court."[42] This language is unilluminating on the subject of jury lenity, and, if anything, the language "may be joined properly" only underscores the point that charging and obtaining a conviction on the alleged underlying traffic offense is not required of the State. Accordingly, the Court does not see any statutory evidence that the jury lenity plus sufficiency of the evidence standard adopted in *Tilden* should not apply to this case.

Rather than relying on textual evidence, Mr. Santiago argues by analogy to *State v. Wilkerson*, a recent case in which this Court, relying on *Johnson* and *Priest*, concluded that a conviction for Endangering the Welfare of a Child[43] could not stand where a defendant was acquitted on the only charged predicate offense.[44] Mr. Santiago reads *Wilkerson* as stating or implying that all statutory-compound inconsistencies fall within the *Priest* exception. The State, however, argues that *Wilkerson* "seems to extend *Priest* beyond the limits expressly imposed in that case."[45]

At the outset, the Court notes that the methodological approach employed in *Wilkerson* is largely consistent with the Court's reasoning here. In *Wilkerson*, the Court first acknowledged that the standard "test employed by Delaware courts in inconsistent verdict cases is the common law *Powell-Tilden* test of jury lenity coupled with sufficiency of the evidence" but proceeded to conclude, based on the

---

[42] 21 *Del. C.* § 4176A(d).

[43] Under 11 *Del. C.* § 1102(a)(4), a person may be convicted for Endangering the Welfare of a Child when "[t]he person **commits any violent felony, or reckless endangering second degree, assault third degree, terroristic threatening, unlawful imprisonment second degree, or child abuse third degree against a victim**, knowing that such felony or misdemeanor was witnessed, either by sight or sound, by a child less than 18 years of age who is a member of the person's family or the victim's family." (emphasis supplied).

[44] *Wilkerson*, 2021 WL 4075018, at *3–4.

[45] Resp. to Mot. for a New Trial.

13

specific statute before it, that the case "falls into the minority, second category of cases, and the *Tilden* test does not apply."[46]  *Wilkerson*'s statutory analysis did emphasize, and arguably turned, on the observation that "the statute requires that at least one predicate felony or at least one of five enumerated predicate misdemeanors must underlie the compound offense."[47]  However, if a predicate-compound structure alone was sufficient to preclude jury lenity, *Morris* would have been decided differently and the Supreme Court in *Priest* had no need to discuss subsection (g) of the PFDCF statute in such depth—i.e., the same result would have been compelled by subsection (a).  Ultimately, whether *Wilkerson*, which analyzed an entirely different statute than the one at issue in this case, correctly applied *Priest* is not before the Court.

In this case, Mr. Santiago points to nothing in 21 *Del. C.* § 4176A—and the Court can identify nothing in its own review—to suggest that the General Assembly intended to abrogate the doctrine of jury lenity with respect to a conviction for operation of a vehicle causing death.  As the Delaware Supreme Court explained in *Priest*, "[i]n most cases of verdict inconsistency, the facts will be controlled by the . . . *Tilden* principle, and inconsistent verdicts resulting from a not guilty verdict on a predicate charge and a guilty verdict on a compound charge will likely not invalidate the conviction."[48]  Here, as in most cases of predicate-compound inconsistency, the inconsistent verdict and non-verdict in this case do not require vacatur of Mr. Santiago's conviction.

## II.    Sufficiency of the Evidence

Where jury lenity applies to an inconsistent verdict, the sole remaining question for the Court is whether the conviction is supported by sufficient evidence,

---

[46] *Wilkerson*, 2021 WL 4075018, at *4.
[47] *Id.*
[48] *Priest*, 879 A.2d at 587.

14

i.e., whether the evidence presented at trial, when "viewed in a light most favorable to the prosecution established that a rational fact finder could have found the defendant guilty beyond a reasonable doubt."[49] Mr. Santiago has made no argument that the evidence presented at trial was insufficient to sustain a conviction for operation of a vehicle causing death, and the Court sees no deficiency in the evidence.

A conviction for operation of a vehicle causing death requires "(1) the defendant operated a motor vehicle or OHV in violation of a provision of Chapter 41 of Title 21 (other than section 4177), and establishing such violation requires the State to prove any mental state contained within *that* motor vehicle offense, and (2) the defendant's driving or operation of the vehicle caused the death of another person."[50] Proof of criminal negligence is not required.[51] To find that a driver is guilty of inattentive driving, the jury must conclude that the driver either failed to "give full time and attention to the operation of the vehicle" or failed "to maintain a proper lookout while operating the vehicle."[52]

On the evidence presented, a rational jury could find beyond a reasonable doubt that Mr. Santiago failed to give full time and attention to the operation of his vehicle or failed to maintain a proper lookout when he made a left turn without noticing an oncoming motorcycle in the opposite lane of travel. That the jury failed to reach a unanimous verdict on the inattentive driving charge does not affect the sufficiency of the evidence analysis.[53] The first element of Mr. Santiago's

---

[49] *Tilden*, 513 A.2d at 1307 (citing *Jackson v. Virginia,* 443 U.S. 307, 1307 (1979)).

[50] *Hoover v. State*, 958 A.2d 816, 819 (Del. 2008) (internal footnote omitted).

[51] *Id.* at 820 ("The General Assembly's purpose in enacting section 4176A was to create an offense that required a less culpable state of mind than criminal negligence in those cases where a motor vehicle offense results in the death of another.").

[52] 21 *Del. C.* § 4176(b).

[53] *See Graham*, 2017 WL 4128495, at *3 ("[B]ecause under *Tilden*, inconsistency is not fatal, as we consider the sufficiency of the evidence we are free to consider all the evidence, whether or

15

conviction is thus supported by sufficient evidence.  As to the second element, the evidence presented at trial readily supports the conclusion that Mr. Santiago's operation of his vehicle was a proximate cause of the victim's death.

## CONCLUSION

In summary, the guilty verdict's legal inconsistency with the non-verdict does not warrant setting aside the verdict under Delaware law, and the evidence is otherwise sufficient to sustain Mr. Santiago's conviction of operation of a vehicle causing death.  For these reasons, the jury's verdict as to that charge will stand, and the matter will proceed to sentencing.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls
*Via Email*
oc:  Prothonotary
cc:  Counsel of Record

---

not it is consistent with the analysis supporting the trial judge's conclusion that the verdicts were theoretically consistent.").